Action by P.A. Cliett against the Lauderdale Biltmore Corporation, Inc., to recover damages for illness caused by impurity of food served to plaintiff in defendant's hotel dining room. Judgment for defendant, and plaintiff appeals.
Reversed and remanded.
The appellee, the proprietor of a hotel and dining room, served a meal containing unwholesome food to the appellant, a paying guest, who became ill as the result of its impurity. The appellant sued the proprietor for damages resulting from his illness, on the theory of an implied warranty that the food was fit for human consumption. A demurrer was sustained to the declaration with leave to plead over. The appellant refused to amend his declaration, submitted to the entry of a final judgment in bar of the action, and prosecuted the present appeal from the final judgment.
The sole question for determination on the pleading is whether the proprietor of a public restaurant or dining room who serves a meal containing unwholesome food to a paying guest for immediate consumption on the premises is under an absolute liability for the damages proximately resulting from the impurities, on the theory of an implied warranty of fitness.
The question is one of first impression in this jurisdiction. In other states where the issue has been presented the courts have been in sharp division on the matter. Some courts have held that in the absence of statute a victualer serving food for immediate consumption on the premises may not be held liable for food deleterious to health, without proof that he was guilty of negligence; while others have determined that aside from any question of negligence such a purveyor of foods for a valuable consideration is under an absolute liability for unwholesome food served by him, on the theory of an implied warranty of fitness. Compare Friend v. Childs Dining Hall Company, 231 Mass. 65,120 N.E. 407, 5 A.L.R. 1100; Nisky v. Childs, 103 N.J.L. 464,135 A. 805, 50 A.L.R. 227; Cushing v. Rodman, 65 App.D.C. 258, 82 F.2d 864, 104 A.L.R. 1023; Temple v. Keeler, 238 N.Y. 344,144 N.E. 635, 35 A.L.R. 920; Goetten v. Owl Drug Co., 6 Cal.2d 683,59 P.2d 142; Heise v. Gillette, 83 Ind. App. 551, *Page 477 149 N.E. 182; Stewart v. Martin, 353 Mo. 1, 181 S.W.2d 657; Yochem v. Gloria, Inc., 134 Ohio St. 427, 17 N.E.2d 731; West v. Katsafanas, 107 Pa.Super., 118, 162 A. 685; Ford v. Waldorf System, 57 R.I. 131, 188 A. 633; S.H. Kress Co. v. Ferguson, Tex.Civ.App., 60 S.W.2d 817; Lewis v. Roescher, 193 Ark. 161, 98 S.W.2d 956; Kenower v. Hotels Statler Co., 6 Cir., 124 F.2d 658; Goodwin v. Country Club of Peoria, 323 Ill. App. 1,54 N.E.2d 612; Doyle v. Fuerst Kraemer,129 La. 838, 56 So. 906, 40 L.R.A., N.S., 480, Ann. Cas. 1913B, 1110; Lynch v. Hotel Bond Co., 117 Conn. 128,167 A. 99; Annotations, 5 A.L.R. 1115; 35 A.L.R. 920; 50 A.L.R. 231; 98 A.L.R. 687; 104 A.L.R. 1033.
In our opinion the implied warranty theory of liability comports with the general trend of the better reasoned cases and is supported, on principle at least, by decisions from our own jurisdiction.
In Blanton v. Cudahy Packing Co., 154 Fla. 872, 19 So.2d 313, this court held that a manufacturer and packer of tinned meat products was liable for injuries sustained by a buyer who became sick from eating the product which had been purchased in the original tin from a retail grocer, on the theory that the transaction involved a sale out of which there arose an implied warranty as between the manufacturer and the ultimate consumer that the food was wholesome and fit for human consumption. In Smith v. Burdine's, Inc., 144 Fla. 500, 198 So. 223, 131 A.L.R. 115, it was decided that a retailer of lipstick which contained poisonous substances was liable for injuries sustained by the purchaser as the result of its use, on the theory that the transaction involved a sale out of which there arose an implied warranty as between the retailer and the purchaser that the article was harmless and not deleterious to health when properly used.
These cases establish the principle that as to items of foods or other products in the original package which are offered for sale for human consumption or use generally, a person who purchases such items in reliance upon the express or implied condition or assurance that they are wholesome and fit for the uses or purposes for which they are advertised or sold, and who is injured as the result of unwholesome or deleterious substances therein which are unknown to the buyer, may hold either the manufacturer or the retailer liable in damages for injuries sustained by him, on the theory of an implied warranty of wholesomeness or fitness of such article or product for the purposes for which it was offered to the public.
The appellee maintains that the principle of implied warranty established by the Florida cases has no bearing on the facts of the case at bar, for the reason that the purchase of a meal in a restaurant does not involve the "sale" of the items of food ordered but only the purchase of a "service" of which the food is but an incidental part, and hence that the doctrine of implied warranty is not applicable.
The contention advanced by the appellee is supported by some of the decisions from other jurisdictions. And, though we express no opinion on the point, the principle may have some application to meals served "boarding house style", where the guests have no voice in the selection of the items of food to be prepared for their use and no real ownership in the victuals placed before them but only the right to consume such as they need and take no more. But we cannot see its soundness where the transaction is with respect to a table d'hote meal or one by the a la carte method of choosing each item the guest desires. To say that when one selects his soup, entree, vegetables, dessert and beverage individually from a wide variety of items listed on a menu, only a "service", and not a "sale" of the meal purchased, is involved, and that because of that fact the restaurant keeper may escape liability for unwholesome or poisonous food served to a paying guest unless the latter can point to specific acts of negligence in its care or preparation, seems basically unsound. As pointed out in Vold on Sales, Sec. 153, p. 477: "Whatever may have been the case in the more remote past, the present day conditions under which meals are served on a commercial basis have served to blur any sharp outlines there may once have been between the facts of service of food at an inn or restaurant and the sale of food in a grocery store." *Page 478 
We can perceive no substantial basis for holding a restaurant keeper who serves food for immediate consumption on the premises to a less degree of responsibility than that imposed upon a retailer who sells food for immediate consumption off the premises. Whether such a transaction be termed a service or a sale every argument for implying a warranty in the ordinary sale of food over the grocery counter for consumption off the premises would seem to be applicable with as great a degree of force to the purchase of a meal for consumption in a hotel dining room or restaurant. "The basis of implied warranty is justifiable reliance on the judgment or skill of the warrantor, and to charge the seller of an unopened can of food for the consequences of the inferiority of the contents of the can, and to hold free from liability a restaurant-keeper who opens the can on his premises and serves its contents to a customer, would be a strange inconsistency." Cushing v. Rodman, 65 App.D.C. 258, 82 F.2d 864, 868, 104 A.L.R. 1023.
Indeed, it would seem that if any distinction were to be drawn between the retailer and the restaurant keeper in such a transaction, the duty of the latter should be greater than that of the retailer who in many instances has no better opportunity for knowledge of the fact that certain foods may contain deleterious substances than has the ultimate consumer who purchases the article. For in a sense the restaurant keeper is the direct manufacturer of the meals he prepares in his own kitchen and serves to his guests in his dining room. It is hardly possible to think of any dishes prepared by him wherein his opportunity for knowledge of the ingredients is not far greater than that of the customer, hence he is in a position largely, if not entirely, denied to the guest to judge of their fitness before he serves them. As between the paying guest, who has no real means of determining whether the meal served is fit for human consumption, and the restaurateur, who is in a position to determine this fact before and during the period of preparation, the burden should properly rest with the one who has or should have such facilities to keep the food pure and fresh as to make an injury to the customer from their use highly improbable if not impossible.
We hold, therefore, that with respect to the guest of a hotel dining room or restaurant who receives, eats and pays for victuals delivered to him on his order, the proprietor must be held to the same degree of duty as regards the wholesomeness of such food as the law imposes upon a retailer of foods and other like products for consumption away from the premises.
From the conclusions reached, it follows that the declaration in the case at bar stated a cause of action for the recovery of damages to the appellant through being made ill on account of the unwholesomeness of the food ordered and consumed in the dining room of the appellee, on the theory of an implied warranty of fitness of the food served him, and that consequently the demurrer to the declaration should have been overruled.
The judgment appealed from is reversed and the cause is remanded for further proceedings in accordance with law.
It is so ordered.
ADAMS, C.J., and TERRELL and CHAPMAN, JJ., concur.