45 So.2d 671 (1950)
SENCER et al.
v.
CARL'S MARKETS, Inc.
Supreme Court of Florida, en Banc.
April 14, 1950.
Broad & Cassel, Miami Beach, for appellants.
Myers, Heiman & Kaplan and Dixon, DeJarnette & Bradford, Miami, for appellee.
*672 CHAPMAN, Justice.
This appeal is from a final judgment entered below in behalf of defendant-appellee upon sustaining demurrer to plaintiff's-appellant's declaration. The declaration alleged an implied warranty by the defendant-appellee that a can of Bar Harbor Sardines sold by the defendant to the plaintiff was fit for human consumption. It was alleged that the plaintiff, after eating a small portion of the contents of the can of sardines, became violently ill and the proximate cause thereof was the deleterious or unwholesome food contained in the can purchased of the defendant-appellee.
Pertinent allegations of the declaration are viz.:
"On or about March 19, 1949, and for sometime prior thereto the defendant was engaged in the business of selling at retail to the general public foods and food products, including a certain canned fish product known as `Bar Harbor Sardines'.
"On or about March 19, 1949, the defendant sold and delivered a certain can of said Bar Harbor sardines to the plaintiff Fannie Sencer, in the defendant's store located at 2155 S.W. 22nd Street, Miami, Florida.
"The plaintiff, Fannie Sencer, purchased said can of Bar Harbor sardines from the defendant's said store, to be used that `noontime as part of the meal at the plaintiff's home. Within a few hours after said purchase, the plaintiff, Fannie Sencer, opened said can, and a few minutes later, the plaintiff, Fannie Sencer, ate a small portion of the contents thereof.
"At the time of the purchase by the plaintiff, Fannie Sencer, of the can of Bar Harbor sardines, as aforesaid, the defendant had impliedly warranted that said can of Bar Harbor sardines was a food fit for human consumption, and until after the plaintiff, Fannie Sencer, ate the small portion thereof, she believed that it was both wholesome and fit for human consumption, and had no notice that it was otherwise. However, at the time it was opened, said can of Bar Harbor sardines contained foreign or dangerous matter deleterious within itself, the said can of Bar Harbor sardines being, on account thereof, dangerous for human consumption."
Posed for adjudication here is the simple question: Is a retail dealer in food products sold in sealed packages or cans to the consuming public liable in damages for injuries sustained by a purchasing consumer because of deleterious, unwholesome or unfit substances for human consumption appearing in the sealed package or can on the theory of an implied warranty? In the case of Blanton v. Cudahy Packing Co., 154 Fla. 872, 19 So.2d 313, we held the manufacturer of such a sealed canned food product liable for damages to a consuming purchaser on an implied warranty theory. It is contended that a legal distinction exists between the manufacturer of such an article of consumption and a retail dealer selling such an article to the consuming public.
Our holding in Blanton v. Cudahy Packing Company, supra, was reaffirmed by this Court in Cliett v. Lauderdale Biltmore Corp., Fla., 39 So.2d 476, 477, when we in part said: "These cases establish the principle that as to items of foods or other products in the original package which are offered for sale for human consumption or use generally, a person who purchases such items in reliance upon the express of implied condition or assurance that they are wholesome and fit for the uses or purposes for which they are advertised or sold, and who is injured as the result of unwholesome or deleterious substances therein which are unknown to the buyer, may hold either the manufacturer or the retailer liable in damages for injuries sustained by him, on the theory of an implied warranty of wholesomeness or fitness of such article or product for the purposes for which it was offered to the public."
Counsel for appellee contend that the implied warranty of food sold in sealed cans or packages should be limited or restricted to the manufacturers and should not be extended to retailers, because the manufacturer knows the quality and content of the food canned and offered to the public for consumption; likewise it has a legal duty to sell the public only wholesome food; it is easier and more equitable to *673 place the duty and responsibility of offering only wholesome food to the consuming public than on the retailer thereof. Counsel for appellants point out that the duty to offer and sell wholesome food in sealed cans and packages to the consuming public should rest alike on the manufacturer and retailer because the retailer is experienced in buying from the manufacturers; he is acquainted with the products and the manufacturers; he relies upon representations made to him. The public is vitally concerned in wholesome food or its health will be jeopardized and a legal distinction as to liability as between the manufacturer and retailer should not exist.
We find a sharp conflict in the authorities on the point now before us. These cases and conflicts have been considered and dealt with by Mr. Williston in his recent work on Sales. In Volume 1 (Rev. Ed.) page 635, he holds the weight of authority viz.:
"The imposition of absolute liability upon a dealer who sells canned goods of reputable manufacture has been denied in a few decisions on the ground that the seller cannot possibly discover that a particular can is defective, and that it is, therefore, unjust to subject him to liability. The same argument, however, may be made in regard to any implied warranty, not only of food or other articles, where the buyer must have been aware that the seller could not discover a defect if it existed. Accordingly, if canned goods are to be made an exception to the general rule governing sales of food, the whole law of implied warranty should be revised and placed on another basis.
"But the general principle of the common law is opposed to this, and certainly if a dealer is ever to be made liable for injuries caused by defective goods where he has been guilty of no fault, the reasons are stronger for holding him liable for selling defective food than in any other kind of sale. And by the weight of authority, presumably for these reasons, a dealer is liable for selling such food even though in sealed containers of a reputable brand."
The judgment appealed from is reversed with directions to enter an order fixing the date for the defendant-appellee to plead to the declaration.
ADAMS, C.J., and THOMAS, J., concur.
TERRELL and HOBSON, JJ., concur specially.
ROBERTS, J., and TILLMAN, Associate Justice, dissent.
HOBSON, Justice (concurring specially).
I concur in the opinion prepared by Mr. Justice Chapman for if the consumer cannot maintain an action against the retailer there will be instances in which he would not be able to sue any one, because many canned products are processed or manufactured in foreign countries. However, I wish to make it very clear that it is my view that the consumer in a case like this might sue either the manufacturer or the retail merchant. Furthermore, I am of the opinion that the retailer who is sued and against whom judgment might be secured, should, in turn, be allowed to sue the manufacturer, which is the reason for my disagreement with the views expressed by Associate Justice Tillman. I do not follow his thought that holding a retail grocer liable in a case of this character would result in bankrupting the individual independent grocer. The retail merchant can avoid placing himself in a position wherein he could not, in turn, sue the manufacturer by electing to purchase only from responsible manufacturers within the jurisdiction of the courts in which he might enter suit.
TERRELL, J., concurs.
TILLMAN, Associate Justice (dissenting).
I cannot agree to the conclusion reached in the opinion written by Chapman, J. I do not think the case of Blanton v. Cudahy Packing Co., 154 Fla. 872, 19 So.2d 313, or the case of Cliett v. Lauderdale Biltmore Corporation, Inc., Fla., 39 So.2d 476, 477 are applicable to the case at bar. In the *674 latter case, the language used "may hold either the manufacturer or the retailer liable in damages for injuries sustained by him, on the theory of an implied warranty of wholesomeness or fitness of such article or product for the purposes for which it was offered to the public" does include the retailer, but in my opinion, the inclusion of the retailer was obiter dicta.
It is well understood that there is a clear cut division of the authorities on this question. This is pointed out in the treatise cited by Judge Chapman, to wit: Williston on Sales. Whatever the supposed weight of authority may be, there is certainly very respectable authority contrary to holding the retailer liable. See the following: Kirkland v. Great Atlantic & Pacific Tea Co., 233 Ala. 404, 171 So. 735; Scruggins v. Jones, 207 Ky. 636, 269 S.W. 743; Kroger Grocery Co. v. Lewelling, 165 Miss. 71, 145 So. 726; Lipari v. National Grocery Co., 120 N.J.L. 97, 198 A. 393; Fleetwood v. Swift & Co., 27 Ga. App. 502, 108 S.E. 909; Great Atlantic & Pacific Tea Co. v. Gwilliams, 189 Ark. 1037, 76 S.W.2d 65; Pennington v. Cranberry Fuel Co., 117 W. Va. 680, 186 S.E. 610; Bigelow v. Maine Cent. R. Co., 110 Me. 105, 85 A. 396, 43 L.R.A.,N.S., 627; Pelletier v. Dupont, 124 Me. 269, 128 A. 186, 39 A.L.R. 972; West v. Emanuel, 198 Pa. 180, 47 A. 965, 53 L.R.A. 329; Walters v. United Grocery Co., 51 Utah 565, 172 P. 473, L.R.A. 1918E, 519; Flessher v. Carstens Packing Co., 93 Wash. 48, 160 P. 14; Green et al. v. Wilson, 194 Ark. 165, 105 S.W.2d 1074.
If the retail grocer is to be held liable on the theory of an implied warrant for canned goods that he does not process and that he has no way of checking on, other than the reputation of the manufacturer who sells that can of goods, the business of the small grocer would become jeopardized to the extent that a man of small means would be foolish to go into it, and I am not willing to jeopardize the existence of this class of small business men.
One can of bad goods could bankrupt 90% of the small independent grocers. It would seem to me much more just to put the burden on the consumer suing the manufacturer who processed the food than it would be to have the class of small business men handling groceries in constant jeopardy of being run out of business. It is my opinion that the judgment of the court below in this case should be affirmed.