55 So.2d 730 (1951)
WHITELEY
v.
WEBB's CITY, Inc.
Supreme Court of Florida, en Banc.
December 21, 1951.
*731 Goldner & Cramer, St. Petersburg, for appellant.
Macfarlane, Ferguson, Allison & Kelly, Tampa, for appellee.
TERRELL, Justice.
Dorothy D. Keyes died at St. Petersburg, Florida, November 12, 1948, without spouse, children or other dependents. Appellant was appointed executrix of her estate and as such, instituted this suit November 8, 1949 to recover damages for her wrongful death. The amended declaration alleges that appellee, defendant, sold the deceased two bottles of a drug known as "Westsal" to be used as a salt substitute, that the said drug was so used by deceased from which she died November 12, 1948. The cause of action was based on breach of implied warranty that the goods were fit for consumption. The ad damnum alleged damages in the sum of $30,000. A demurrer to the amended declaration was argued and the court entered an order withholding judgment thereon but certified two questions to this Court under Rule 38, 30 F.S.A.
The first question is as follows: Does the personal representative of a deceased person have an action for the death of such person based upon breach of warranty of fitness on the part of defendant in a transaction between such deceased person and the defendant?
The answer to this question turns on the interpretation of Section 768.01, Florida Statutes of 1949, F.S.A., the pertinent part of which is as follows: "Whenever the death of any person in this state shall be caused by the wrongful act, negligence, carelessness or default of any individual or individuals, or * * * of any corporation, * * * and the act, negligence, carelessness or default, is such as would, if the death had not ensued, have entitled the party injured thereby to maintain an action * * * and to recover damages in respect thereof, then and in every such case the person or persons who, or the corporation * * *, which would have been liable in damages if death had not ensued, shall be liable to an action for damages * * * notwithstanding the death of the person injured, and although the death shall have been caused under such circumstances as amount in law to a felony."
Relying on Greco v. S.S. Kresge Co., 277 N.Y. 26, 12 N.E.2d 557, 115 A.L.R. 1020, appellant contends that this question should be given an affirmative answer. It is true that there were factual elements in Greco v. S.S. Kresge Co. similar to those in the instant case but a study reveals that the case was submitted to the Court and adjudicated on the question of negligence while the gist of the action in the present case is not negligence, but one grounded on implied warranty. Unless implied warranty can be read into the quoted statute there is no basis for recovery.
It would be idle to suggest a right of action existed under the common law. The quoted statute, like similar statutes in other states, stems from Lord Campbell's Act passed in England in 1846 and was designed to remove what had come to be considered one of the injustices of the common law. By the very terms of Lord Campbell's Act and the quoted act the cause of action depends on the "wrongful act, negligence, carelessness or default" of the defendant. Most all the jurisdictions in the country and in England hold that the statute was designed to support actions ex delicto and not ex contractu. 16 Am.Jr. 46, Death Par. 60; 25 C.J.S., Death, § 23, p. 1088. State and Federal decisions are to like effect.
Our statute uses the words "wrongful act, negligence, carelessness or default". When under consideration at various times by the legislature the title related to "claims for death caused by negligence" or words of similar import. We do not deem a detour into the field of semantics necessary to fortify this thesis because the plain words used in the title and body of the different acts would seem to remove any doubt that they are limited to remedies where death results from the wrongful or tortious acts of the defendant and have no *732 application to breach of promise or contractual obligations.
Appellant also relies on the decision of this Court in Sencer v. Carl's Markets, Inc., Fla., 45 So.2d 671, 672. Liability in that case was expressly laid on contractual liability between the retailer and purchaser of a food product sold directly to the consumer. In the case at bar we are concerned with a drug product sold on doctor's prescription. It could not be sold until approved by the pure food and drug administration in compliance with Federal Law. None of these conditions are negatived by the declaration, and being so, even if the doctrine of implied warranty was applicable, to apply it in this case would go far beyond the doctrine in Sencer v. Carl's Markets, Inc.
We think question one is within the contemplation of Rule 38 as interpreted in Schwob Co. of Florida, v. Florida Industrial Commission, 152 Fla. 203, 11 So.2d 782 and answer it in the negative. As to the phase of the statute involved it is a case of first impression and disposes of the litigation. Since we answer question one in the negative it becomes unnecessary to answer question two.
The certificate is granted and question one is answered in the negative.
SEBRING, C.J., HOBSON, J., and LEWIS, Associate Justice, concur.
CHAPMAN, ROBERTS and MATHEWS, JJ., dissent.
THOMAS, J., not participating.
MATHEWS, Justice (dissenting).
Dorothy D. Keyes died at St. Petersburg, Florida, November 12, 1948, without spouse, children or other dependents. Appellant was appointed executrix of her estate and as such, instituted this suit November 8, 1949, to recover damages for her wrongful death. The amended declaration alleges that appellee, defendant, sold the deceased two bottles of a drug known as "Westsal" to be used as a salt substitute, that the said drug was so used by deceased from which she died November 12, 1948. The cause of action was based on breach of implied warranty that the goods were fit for consumption. The ad damnum alleged damages in the sum of $30,000.00. A demurrer to the amended declaration was argued and the court entered an order withholding judgment thereon but certified two questions to this Court under Rule 38.
The first question is as follows: Does the personal representative of a deceased person have an action for the death of such person based upon breach of warranty of fitness on the part of defendant in a transaction between such deceased person and the defendant?
The answer to this question turns on the interpretation of Section 768.01, Florida Statutes of 1949, F.S.A., the pertinent part of which is as follows: "Whenever the death of any person in this state shall be caused by the wrongful act, negligence, carelessness or default of any individual or individuals, or * * * of any corporation, * * * and the act, negligence, carelessness or default, is such as would, if the death had not ensued, have entitled the party injured thereby to maintain an action * * * and to recover damages in respect thereof, then and in every such case the person or persons who, or the corporation * * *, which would have been liable in damages if death had not ensued, shall be liable to an action for damages * * * notwithstanding the death of the person injured, and although the death shall have been caused under such circumstances as amount in law to a felony."
It is admitted that unless a breach of an implied warranty can be read into the quoted statute, there is no basis for recovery.
The primary question is, therefore, do the words "wrongful act  or default" include a breach of an implied warranty?
In Ballentine's Law Dictionary the word default is defined as being synonomous with "neglect or omission; the failure to perform a duty".
The above statute contains words similar to words from Lord Campbell's Act passed in England in 1846, and was designed to accomplish the same purpose. There is no better rule to guide us in construing a statute than to consider the history of the *733 times and the injustice or evil sought to be remedied. However, before Lord Campbell's Act, under the common law a person injured through a breach of duty imposed upon another might during his lifetime recover for such injury, but death put an end to the liability of the person responsible for such breach. The statute was enacted to remedy partially that evil and not to perpetuate it by leaving the statute open to narrow construction, as was said by Judge Cardozo in his opinion in the case of Van Beeck v. Sabine Towing Company, Inc., 300 U.S. 342, 57 S.Ct. 452, 456, 81 L.Ed. 685: "Death statutes have their roots in dissatisfaction with the archaisms of the law which have been traced to their origin in the course of this opinion. It would be a misfortune if a narrow or grudging process of construction were to exemplify and perpetuate the very evils to be remedied. There are times when uncertain words are to be wrought into consistency and unity with a legislative policy which is itself a source of law, a new generative impulse transmitted to the legal system. * * * Its intimation is clear enough in the statutes now before us that their effects shall not be stifled, without the warrant of clear necessity, by the perpetuation of a policy which now has had its day."
There is a splendid annotation on this subject in 115 A.L.R. 1026, wherein the author states:
"The present annotation supplements that in 80 A.L.R. 880.
"It will be observed that the question under consideration is one largely of construction of the wrongful death statutes, and that differences in phraseology in these statutes may sometimes account for differences in result.
"The general rule stated in the earlier annotation, that a cause of action for wrongful death under the death statutes may exist notwithstanding the fact that a contractual relation between the defendant and the decedent is shown, is further supported by Cochran v. Laton (1918) 78 N.H. 562, 103 A. 658; Greco v. S.S. Kresge Co. (N.Y.) (reported herewith) ante [277 N.Y. 26, 12 N.E.2d 557, 115 A.L.R.] 1020; and Grein v. Imperial Airways (1937) 1 K.B. (Eng.) 50-C.A. See also Eubanks v. Schwalbe, Tex.Civ.App. 1932, 55 S.W.2d 906, modified on other grounds in [U.S. Fidelity & Guaranty Co. v. Eubanks] 1935, 126 Tex. 405, 87 S.W.2d 248, infra."
The case of Greco v. Kresge Co., 227 N.Y. 26, 12 N.E.2d 557, 559, 115 A.L.R. 1020, is a well-reasoned case and seems to be decisive on this question.
In that case two causes of action were set up in the bill of complaint. The first was based upon the theory of a breach of an implied warranty that the food sold was fit for human consumption, and the second, upon the theory of negligence. The cause with reference to negligence was dismissed by mutual consent. The defendant's motion to dismiss the first cause based upon a breach of an implied warranty was denied. The following question was certified: "The second cause of action having been withdrawn, does the complaint state facts sufficient to constitute a cause of action?". We have the identical question presented in the case now before the Court.
The words of the New York Death Statute are identical with the words of our statute. In discussing Lord Campbell's Act, the Court said:
"Although there have been a number of amendments, the original act has not been changed in so far as the condition attached that the action can be maintained only for death arising through the wrongful act, neglect, or default of the person to be charged with liability in a cause which might have been maintained by the person injured had death not ensued. Here, as under the English act, decisive on whether the action may be maintained are the `circumstances under which the bodily injury arose and the nature of the wrongful act, neglect, or default' of which complaint is made.
"Prior to the action for assumpsit, the remedy for breach of warranty was an action on the case for deceit. Ames' Lectures on Legal History (1913), p. 136. Even today, an action for breach of warranty is, in some respects, an action in tort. Mere breach of contract, generally speaking, *734 is not a tort. Yet the distinction between torts and breaches of contract is, ofttimes, so dim and shadowy that no clear line of delineation may be observed and no accurate or satisfactory definition of either may be formulated. Rich v. New York Cent. & H.R.R. Co., 87 N.Y. 382; Busch v. Interborough Rapid Transit Co., 187 N.Y. 388, 391, 80 N.E. 197, 10 Ann.Cas. 460. Under each cause of action, whether framed in tort or on contract, default or breach of duty involves an injury. At times the same facts may warrant procedure ex contractu or ex delicto. At such times recovery is not conditioned on definition nor measured by a determination of whether it is grounded in a violation of a duty owing to another or in a breach of a contractual obligation. Nor is an action any the less on contract because the elements of damage arise out of a trespass."
In determining this all important question the New York Court said: "We conclude that the breach of the warranty in a case such as this was a `default' or `wrongful act' within the meaning of those terms as used in the statute not only as a matter of definition but within the clear legislative intent. Liability here is predicated upon the `default' or `wrongful act' of the seller and the exercise of due care on the part of the purchaser. The purchaser could recover, if living, because of the injury she received through the `wrongful act' or `default' of the seller based on the breach of the implied warranty that the food was fit for human consumption. The cause of action would not fail because the allegations of the complaint did not proceed along traditional lines employed in an action for negligence."
There is nothing in the record to show that the article in question could only be purchased on a doctor's prescription. The exhibit attached, which is an advertisement of the product in question, and a label on the paper carton in which the product was sold, contains the following language:

"WESTSAL
Suggested as a flavoring, instead of salt, for persons who must exclude common table salt (sodium chloride) from their diet.
Flavor Not Lost in Cooking or Baking
See leaflet enclosed for details.

TO USE:
Pry off cap on pouring spout. Snip off tip of spout with scissors. Punch hole with pin.
Perfectly safe, convenient."
There is absolutely no suggestion that a doctor's prescription is necessary in order to buy this product when the customer is told: "To Use: pry off cap on pouring spout. Snip off tip of spout with scissors. Punch hole with pin. Sprinkle right on food at the table  or use in cooking or baking. Perfectly safe, convenient. Flavor not lost in cooking or baking."
It is true that in small print we find the words: "Caution: Use Westsal only on the prescription or recommendation of a physician.". There is no suggestion that a doctor's prescription is necessary in order to buy this product.
It is significant that this advertisement tells the public that the product is "perfectly safe, convenient". The most that can be said is that the product was represented to be perfectly safe and convenient as a flavoring instead of salt for persons who must exclude common table salt from their diet. The caution that it should only be used on a doctor's prescription or a recommendation of a physician cannot change the representation or warranty that the product was perfectly safe and convenient.
We, therefore, conclude that the words "wrongful act  or default" include a breach of an implied warranty, and the first question propounded is answered in the affirmative.
Second question: Does a retail merchant selling a product in a sealed container, manufactured by a third party, impliedly warrant to the purchaser that such product is reasonably fit for the purpose for which it is sold?
This question must likewise be answered in the affirmative under the authority of Sencer v. Carl's Markets, Inc., Fla., 45 So.2d 671, 672.
*735 The certificate should be granted and both questions propounded should be answered in the affirmative.
CHAPMAN, J., concurs.