167 So.2d 901 (1964)
John McLEOD, a citizen and resident of Dade County, Florida, Appellant,
v.
W.S. MERRELL COMPANY, DIVISION OF RICHARDSON-MERRELL, INC., International Pharmacies, Inc., and James Drug Shop, Inc., jointly and severally, Appellees.
No. 64-30.
District Court of Appeal of Florida. Third District.
October 13, 1964.
*902 Nichols, Gaither, Beckham, Colson & Spence and Alan R. Schwartz and Robert Orseck, Miami, for appellant.
Walton, Lantaff, Schroeder, Atkins, Carson & Wahl, Miami, for W.S. Merrell Co.
Sherouse & Corlett and Richard M. Gale, Miami, for International Pharmacies, Inc.
Blackwell, Walker & Gray and James E. Tribble and Paul R. Larkin, Jr., Miami, for James Drug Shop.
Before BARKDULL, C.J., and CARROLL and HENDRY, JJ.
HENDRY, Judge.
Plaintiff appeals the dismissal of his complaint against two of the three defendants. The complaint alleges that plaintiff suffered personal injuries as a result of taking a drug know as "Mer/29" which defendants had impliedly warranted to be fit for human consumption and of merchantable quality. The drug was prescribed by plaintiff's physician, a medical doctor, to control excess body cholesterol. The defendant, W.S. Merrell Company, manufactured the product and sold it to the defendants, International Pharmacies and James Drug Shop who filled the plaintiff's prescriptions. The drug as formulated and distributed by the manufacturer was the alleged cause of the injury. There is no contention that the product as dispensed to plaintiff contained any foreign matter.
The trial court dismissed plaintiff's complaint as to the two drug stores on the ground that there were no implied warranties running from the druggist who fills a doctor's prescription with an unopened and uninspected product to the purchaser thereof.
This appeal raises the novel question of whether a retail druggist impliedly warrants the products he dispenses pursuant to a doctor's prescription where there is no opportunity for inspection, and there is no foreign material in the product, but injury results because of the nature of the product. There are, of course, several questions intertwined in the issue above stated.
We do not feel it necessary to outline the history of the development of the law of product's liability in Florida, inasmuch as, this service has been amply performed by Judge Rives of the U.S. Court of Appeals in Green v. American Tobacco Company, 304 F.2d 70 (5th Cir.1962). We refer all students of this area of the law thereto. We shall, however, discuss several of the cases in this area which had a bearing upon our conclusions.
In Cliett v. Lauderdale Biltmore Corporation, Fla. 1949, 39 So.2d 476 the proprietor of a hotel served unwholesome food to its paying guests, who became ill as a result of the impurity. The innkeeper sought to avoid liability on the ground that no implied warranty attached because this was a "service as opposed to a sale", in that, the innkeeper simply served food produced by another. The court rejected this argument, saying:
"We can perceive no substantial basis for holding a restaurant keeper who serves food for immediate consumption on the premises to a less degree of responsibility than that imposed upon a retailer who sells food for immediate consumption off the premises. Whether such a transaction be termed a service or a sale every argument for implying a warranty in the ordinary sale of food over the grocery counter for consumption off the premises would seem to be applicable with as great a degree of force to the purchase of a meal for consumption in a hotel dining room or restaurant." 39 So.2d at 478.
The court, by this decision, disposed of one of appellee's arguments, to the effect that an implied warranty does not operate *903 because the druggist performs a service as opposed to a sale.
Thereafter the Supreme Court decided Sencer v. Carl's Markets, Inc., Fla. 1950, 45 So.2d 671 where the purchaser of a can of adulterated sardines sued the retailer for damages resulting from the consumption of these sardines. The court held the retailer liable on his implied warranty, and quoting from Professor Williston, said:
"But the general principle of the common law is opposed to this, and certainly if a dealer is ever to be made liable for injuries caused by defective goods where he has been guilty of no fault, the reasons are stronger for holding him liable for selling defective food than in any other kind of sale. And by the weight of authority, presumably for these reasons, a dealer is liable for selling such food even though in sealed containers of a reputable brand." 45 So.2d at 673.
The court, by this decision, ruled that the retailer impliedly warrants the product he sells even though it is sealed and he has no opportunity to examine it.
Subsequently, the court decided the case of Whitely v. Webb's City, Fla. 1951, 55 So.2d 730, where it was held that the personal representative of a deceased person may not bring an action for breach of warranty under the wrongful death statute. The court then went on to say:
"Appellant also relies on the decision of this Court in Sencer v. Carl's Markets, Inc., Fla., 45 So.2d 671, 672. Liability in that case was expressly laid on contractural liability between the retailer and purchaser of a food product sold directly to the consumer. In the case at bar we are concerned with a drug product sold on doctor's prescription. It could not be sold until approved by the pure food and drug administration in compliance with Federal Law. None of these conditions are negatived by the declaration, and being so, even if the doctrine of implied warranty was applicable, to apply it in this case would go far beyond the doctrine in Sencer v. Carl's Markets, Inc." 55 So.2d at 732.
The appellees urge the above cited case upon us as controlling, and we are inclined to agree, notwithstanding the more recent opinion of the Supreme Court in Green v. American Tobacco Company, Fla. 1963, 154 So.2d 169.
In Green, the court decided that the manufacturer of cigarettes impliedly warranted the fitness of its product when the consumer contracted cancer from using said product. In that case the Supreme Court was dealing with the manufacturer, not the retailer. To hold the retailer liable in related but different circumstances, would require us to conclude that Green overruled Webb's City. We find no basis for such a conclusion.
It is our opinion that this case is controlled by Webb's City, and we must therefore affirm the dismissal of the complaint as to the retail druggist.
Affirmed.