211 So.2d 161 (1968)
Petsonella MORAGNE, As Personal Representative of the Estate of Edward Moragne, Sr., Deceased, and Petsonella Moragne, Individually, Appellants,
v.
STATE MARINE LINES, INC., et al., Appellees.
No. 36601.
Supreme Court of Florida.
May 29, 1968.
Rehearing Denied July 3, 1968.
*162 C.J. Hardee, Jr., of Hardee, Ott & Hamilton, Tampa, for appellants.
John W. Boult, Dewey R. Villareal, Jr. and Fowler, White, Collins, Gillen, Humkey & Trenam, Tampa, for State Marine Lines, Inc.
David C.G. Kerr, Daniel E. Gallagher and Macfarlane, Ferguson, Allison & Kelly, Tampa, for Gulf Florida Terminal Co.
ROBERTS, Justice.
This cause is before the court for determination of a question of law certified to us by the United States Court of Appeals for the Fifth Circuit pursuant to § 25.031, Fla. Stat., F.S.A., and Rule 4.61, Florida Appellate Rules, 32 F.S.A. Moragne v. State Marine Lines, Inc., et al., opinion and certificate filed August 11, 1967. The question certified reads as follows:
"Does the Florida Death by Wrongful Act Statute give rise to a cause of action under principles of the maritime law of unseaworthiness for the wrongful death of a longshoreman caused by the unseaworthiness of a vessel on the navigable waters of the State of Florida?"
Plaintiff-appellant's decedent was employed as a longshoreman by Gulf Florida Terminal Company, a stevedore of Tampa, Florida. While performing his regular duties as an employee of this company on board the vessel S.S. Palmetto State, a hatch beam became disengaged from its position, allegedly because of a defective locking arrangement, and fell into the hold striking the deceased in the head, killing him instantly.
Suit was filed by his widow, individually, under the Florida Wrongful Death Act, § 768.01, Fla. Stat., F.S.A., and as personal representative of her deceased husband's estate, under the Florida Survival Statute, § 45.11, Fla. Stat., F.S.A., against the defendant-appellee State Marine Lines, Inc., owner of the vessel S.S. Palmetto State, seeking the damages recoverable under these statutes by those entitled thereto. Originally filed in the appropriate state court, the cause was on motion of the defendant removed to the federal court on diversity-of-citizenship grounds.
The plaintiff's complaint was framed in two aspects: one based on the alleged negligence of the defendant-shipowner in failing to keep and maintain the vessel, its equipment and appurtenances, in a safe, sound and proper condition; and another based on the maritime concept of "unseaworthiness." *163 The trial judge dismissed the unseaworthiness count as to the cause of action brought by the plaintiff, individually, under the Florida Wrongful Death Act for the reason that such a cause of action was not within the contemplation of the Wrongful Death Act. Leave to appeal this interlocutory order was granted by the Circuit Court of Appeals, and the question of law quoted above was thereafter certified to this court for decision.
As we understand it, "unseaworthiness" as a basis for liability under maritime law has to do with the absolute non-delegable duty of a shipowner to provide members of the vessel's crew, including longshoremen when engaged in loading, unloading, or stowing the cargo, with a vessel "sufficient in all respects for the trade in which it is employed," Lowe v. Vessel Madrid, D.C.Fla. 1962, 210 F. Supp. 826, and to prevent their injury by any part of the vessel or equipment used in the ordinary course of their employment. Clark v. Symonette Shipyards, Ltd., 330 F.2d 554 (C.A.5 1964). It contemplates "liability without fault", Mahnich v. Southern S.S. Co., 321 U.S. 96, 64 S.Ct. 455, 88 L.Ed. 561 (1944), and has been said to be "a duty likened to implied contractual warranty." Seas Shipping Co. v. Sieracki, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099.
It is conceded that, had he lived, the plaintiff's decedent could have filed suit against the defendant-shipowner, in Admiralty, on a cause of action based on unseaworthiness. But this cause of action died with his death under maritime law. Neither the maritime law nor the common law recognized a cause of action for wrongful death. By statute, Congress has provided a remedy for wrongful death on the high seas (the Death on the High Seas Act, enacted in 1920, 46 U.S.C. Sec. 761), and for the death of a seaman (the Jones Act, 46 U.S.C. Sec. 688). But the death of the plaintiff, a non-seaman within the territorial waters of the State of Florida, is not covered by either of these federal statutes. (We note, parenthetically, that even under the Jones Act the plaintiff could not have recovered for the wrongful death of her husband under her cause of action based on unseaworthiness. See Gillespie, Admx. v. United States Steel Corp., 379 U.S. 148, 85 S.Ct. 308, 13 L.Ed.2d 199 (1964), re-affirming Lindgren v. United States, 281 U.S. 38, 50 S.Ct. 207, 74 L.Ed. 686, decided in 1930.)
It appears that the plaintiff, as the widow of the decedent, is entitled to the benefits prescribed by the Federal Longshoremen's and Harbor Workers' Compensation Act, Title 33, U.S.C.A., Chapter 18, for the death of her husband; however, any additional remedy to that provided by the federal compensation act must be found, if at all, under the Florida Wrongful Death Act, § 768.01, Fla. Stat., F.S.A.
This Act, § 768.01, provides as follows:
"(1) Whenever the death of any person in this state shall be caused by the wrongful act, negligence, carelessness or default of any individual or individuals, or by the wrongful act, negligence, carelessness or default of any corporation, or by the wrongful act, negligence, carelessness, or default, of any agent of any corporation, acting in his capacity of agent of such corporation (or by the wrongful act, negligence, carelessness or default of any ship, vessel or boat or persons employed thereon), and the act, negligence, carelessness or default, is such as would, if the death had not ensued, have entitled the party injured thereby to maintain an action (or to proceed in rem against the said ship, vessel or boat, or in personam against the owners thereof, or those having control of her) and to recover damages in respect thereof, then and in every such case the person or persons who, or the corporation (or the ship, vessel or boat), which would have been liable in damages if death had not ensued shall be liable to an action for damages (or if a ship, vessel or boat, to a libel in rem, and her owners or those *164 responsible for her wrongful act, negligence, carelessness or default, to a libel in personam), notwithstanding the death of the person injured, and although the death shall have been caused under such circumstances as amount in law to a felony.
"(2) The right of action as set forth in subsection (1) above shall extend to and include actions ex contractu and ex delicto."
Since its enactment in 1833, this Act has been treated as restricted in its application to deaths resulting from tortious acts for which the actor would have been liable to the deceased under traditional common-law concepts. See Shiver v. Sessions, 80 So.2d 905 (Fla. 1955), and Shearn v. Orlando Funeral Home, Inc., 88 So.2d 591 (Fla. 1956).
It is equally well settled that the Florida Act does not preserve the right of action which the deceased, had he lived, could have prosecuted, but creates in behalf of the statutory beneficiaries a totally new right of action for the wrongful death, on different principles. See Florida East Coast Railway Co. v. McRoberts, 111 Fla. 278, 149 So. 631 (1933); Shiver v. Sessions, supra, 80 So.2d 905; Parker v. City of Jacksonville, 82 So.2d 131 (Fla. 1955). In the Florida East Coast Railway case the plaintiff sought to recover in a wrongful death action the punitive damages which the decedent, had he lived, could have claimed. In holding that they could not be recovered, this court said:
"The common-law right to recover punitive damages having accrued as an incident to the right of the injured party to recover from the tortious injury inflicted in this case, the death of such injured party caused both the right of action and the incidents to it to die at the same time."
It was also pointed out that the language of our Wrongful Death Act, requiring the jury to give such damages "as the party or parties entitled to sue may have sustained by reason of the death of the party killed", clearly implied that punitive damages were to be excluded from consideration in a wrongful death action.
Further illustrating the distinction between the two rights of action  that of the deceased, had he lived, and that of the statutory beneficiaries under the Wrongful Death Act  it was held in each of the other two cases cited above that the statutory beneficiaries could recover the damages sustained by them, even though their decedent's suit, had he lived, would have been barred. Shiver v. Sessions, supra, 80 So.2d 905; Parker v. City of Jacksonville, supra, 82 So.2d 131.
Because of its obligation, in enforcing a state-created right, to "take the right subject to the limitations which have been made a part of its existence * * *", The Harrisburg, 119 U.S. 199, 7 S.Ct. 140, 30 L.Ed. 358 (1886), the Fifth Circuit Court of Appeal held in two cases in accordance with the decisions of this court, supra, that an action for wrongful death based on unseaworthiness was not within the contemplation of the Florida Wrongful Death Act. See Graham v. A. Lusi, Ltd., 206 F.2d 223 (C.A.5, 1953), and Emerson v. Holloway Concrete Products Co., 282 F.2d 271 (C.A.5, 1960).
On the appeal in the instant case, and here, the appellant contends that amendments to the Florida Wrongful Death Act made in 1915 and in 1953 have changed its complexion: that, while originally creating and authorizing death actions only when based on a tort against the plaintiff's decedent, the Act has now been broadened to include causes of action arising ex contractu as well as ex delicto. The appellate court was urged to recede from its decisions in the Graham and Emerson cases, and this court is urged to reject those decisions and align itself with the "great weight of authority" in other jurisdictions and hold that a death action based on unseaworthiness is created by the Florida Wrongful Death Act.
*165 The courts of other jurisdictions, in the decisions here relied on by appellant, appear to us to have made an entirely different interpretation of their wrongful death acts from that made by this court. For example, in Holley v. The Manfred Stansfield, 269 F.2d 317 (C.A.4th 1959), it was held that the Virginia statute was intended "to preserve rights which the decedent would have had if his injuries had not proved fatal." This interpretation is in direct conflict with the statement of this court concerning the Florida Act in Florida East Coast Railway Co. v. McRoberts, supra, 149 So. 631, that the provisions of the Act
"* * * do not purport to transfer to the statutory representatives * * * the right of action which the injured party might have maintained for his injury had he lived, but those sections give to such statutory representatives * * * a totally new right of action for the wrongful death, and that on different principles."
Likewise, in Vassallo v. Nederl-Amerik etc., 162 Tex. 52, 344 S.W.2d 421 (1961), in rejecting the construction of the Texas Wrongful Death Act made by the Fifth Circuit Court of Appeals in Truelson v. Whitney and Bodden Shipping Co., 10 F.2d 412 (C.A.5 1926), as to the applicability in a death action of the comparative negligence rule recognized in Admiralty, it was said that under the Texas Wrongful Death Act
"* * * the defendant can assert any defense to that cause of action that it could have asserted if the decedent had survived, and no other. The statutory beneficiaries of a deceased longshoreman have the same substantive rights to recover as the deceased would have had had his injury been less than death. It follows that his contributory negligence must be considered only in mitigation of damages."
This interpretation is contrary to the decisions of this court quoted above; since, as noted, in the Shiver and Parker cases, supra, 80 So.2d 905 and 82 So.2d 131, the defense asserted by the defendant in each of those cases would have been a bar to a suit by the decedent to recover for his injuries, but was disallowed in the suit filed by the statutory beneficiaries to recover for their injuries; and in the Florida East Coast Railway case, supra, 149 So. 631, it was held that a substantive right of recovery which the decedent would have had (to recover punitive damages) was extinguished with his death along with his right of action, and that, having once died, the express terms of the Act  requiring the jury to award such damages as the statutory beneficiaries may have sustained by reason of the death of their decedent  "affirmatively negatives the idea that punitive damages are to be considered as an incident to the damages allowed for the new statutory cause of action." 149 So. at p. 636. And it would seem to be just as inconsistent with the express terms of the Act to allow the damages sustained by the statutory beneficiaries by reason of the death of their decedent to be "mitigated"  that is, reduced  in such proportion as the negligence of their decedent contributed to his injuries and damage, as it would have been to award punitive damages to the statutory beneficiaries because of the injuries sustained by their decedent. Yet this would be the result of the holding here contended for by appellant, since the maritime concept of "unseaworthiness" not only holds the ship-owner liable without fault but also allows the seaman or longshoreman to recover even though he is at fault  the so-called comparative negligence rule of the maritime law. As noted above, such a result would appear to be "affirmatively negatived" by our Wrongful Death Act, as in the Florida East Coast Railway case, supra, 149 So. at page 636.
We are not, therefore, persuaded by the decisions cited by the appellant, since they appear to be bottomed on statutes entirely different  or, at least, interpreted differently  from the Florida Wrongful Death *166 Act. On the other hand, the appellee calls our attention to decisions based on death statutes interpreted as creating "a new right of action" and holding that the substantive law of the state, rather than concepts peculiar to maritime law such as "unseaworthiness" and the comparative negligence rule, was applicable in a wrongful death action. See Lee v. Pure Oil Co., 218 F.2d 711 (C.A. 6, 1955); Curtis v. Garcia y Cia, 241 F.2d 30 (C.A. 3, 1957); and Niepert v. Cleveland Electric Illuminating Co., 241 F.2d 916 (C.A. 6, 1957), cert. den. 354 U.S. 909, 77 S.Ct. 1295, 1 L.Ed.2d 1427 (1957). These decisions are in accord with the interpretation of the Florida Wrongful Death Act made by this court in the decisions cited above, and many others.
Nor are we persuaded that the 1915 and 1953 amendments to the Florida Wrongful Death Act had the effect of creating a right of action for death caused by unseaworthiness, as contended by the appellant.
The 1915 amendatory Act, Ch. 6913, Laws of Florida, Acts of 1915, was entitled "AN ACT to Amend Section 3145, General Statutes of the State of Florida, [Sec. 768.01(1), Fla. Stat.] Relating to Claims for Death Caused by Negligence." (Emphasis added.) It added to the statute the clauses appearing in parentheses in the Act, Sec. 768.01(1), quoted above. The parentheses were a part of the Act, as amended. The purpose of the Legislature in parenthesizing these additions to the Act is not apparent; perhaps, it was simply to make clear that the Act contemplated a cause of action for death even though predicated on circumstances giving rise to a tort cognizable in Admiralty as well as under the substantive law of this state. In any event, we cannot assume that the Legislature intended, in 1915, to extend the Wrongful Death Act to include a right of action based on a concept purely maritime in character, unknown to the common law and the substantive law of this state, contrary to the decisions of this court interpreting the Act, and not within the intendment of the Act, as expressed in the title of the amendatory Act, as one creating a cause of action "for death caused by negligence." If this had been intended, it would have been a simple matter to add appropriate words at the end of the list of derelictions recited in the Act, and to so indicate in the title of the amendatory Act. It did not do so, and still has not done so, unless that result was achieved by the 1953 amendment to the Act, as here contended by the appellant.
The 1953 amendment, Ch. 28280, Laws of Florida, Acts of 1953, added Subsection (2) of the Act, to provide that
"(2) The right of action as set forth in subsection (1) above shall extend to and include actions ex contractu and ex delicto.
It was adopted subsequent to the decision of this court in Whiteley v. Webb's City, Inc., 55 So.2d 730 (Fla. 1951), presumably to encompass a death action based on a cause of action for breach of implied warranty without fault recognized by this court in a limited area. See Sencer v. Carl's Market, Inc., 45 So.2d 671 (Fla. 1950); Foley v. Weaver Drugs, Inc., 177 So.2d 221 (Fla. 1965), and cases cited therein. The appellant makes the ingenious argument that a cause of action for "unseaworthiness" is a specie of "liability without fault", in the nature of an "implied contractual warranty", and, as such, is within the contemplation of the 1953 amendment, supra.
We think no useful purpose would be served in entering into a discussion of the "strict liability" theory under which this court has in a few situations  mostly involving foodstuffs  held a manufacturer or retailer to be strictly liable for injuries resulting from use of a product without regard to established common-law principles relating to implied warranty. It suffices to say that the maritime concept of "unseaworthiness" is completely foreign to the "implied warranty" concept of strict liability with which the Legislature was obviously concerned in enacting the 1953 amendment. *167 Moreover, to hold that "unseaworthiness" is contemplated by the Act, as amended in 1953, we would have to assume that the Legislature intended to grant to one small segment of our population (the surviving dependents of a deceased longshoreman or seaman killed in the course of his employment) the special privileges which the maritime law would have accorded, not to them, but to their decedent, and to deny an equal advantage to others similarly situated in all respects except as to the occupation of their decedent. In the absence of a clear legislative mandate, we cannot infer such a discriminatory intention on the part of the Legislature, even if it be assumed, arguendo, that such an intention could be validly accomplished. Cf. Georgia Southern & Florida Railway Co. v. Seven-Up Bottling Co. of Southeast Georgia, 175 So.2d 39 (Fla. 1965).
Finally, we note that the Legislature lost no time in amending the Wrongful Death Act following the decision of this court in the Whiteley case, supra, 55 So.2d 730 (it was amended at the next succeeding session of the Legislature), yet more than fifteen years have elapsed since the Fifth Circuit Court of Appeals held in the Graham case, supra, 206 F.2d 223, that the Act was not applicable to a death action based on the maritime tort of "unseaworthiness," and it has been more than eight years since this holding was re-affirmed in the Emerson case, supra, 282 F.2d 271. The Legislature has not seen fit to act in response to such decisions.
In all of these circumstances, it is our opinion that to hold that "unseaworthiness" is within the contemplation of our Wrongful Death Act would be tantamount to judicial legislation; and this, of course, is beyond our constitutional power.
The decision of a Florida District Court of Appeal in Weed v. Bilbrey, 201 So.2d 771, referred to by appellant, has been noted; however, this decision is pending before this court on direct-conflict certiorari and is not, therefore, either final, authoritative or decisive of the certified question.
For the reasons stated, the answer to the question certified must be in the negative.
CALDWELL, C.J., and THOMAS, J., concur.
WHITE, Circuit Judge (Retired), concurs with Opinion.
ERVIN, J., dissents with Opinion.
WHITE, JOS. S., Circuit Judge (Retired) (concurring).
Liability for "unseaworthiness" as applied by the Federal Courts seems even broader than liability for breach of implied warranty. While the duty arising in case of unseaworthiness has been compared, by way of illustration, with the duty created by implied warranty, yet the Supreme Court of the United States, at the same time, has said: "It (liability for unseaworthiness) is essentially a species of liability without fault, analogous to other well known instances in our law. Deriving from and shaped to meet the hazards which performing the service imposes, the liability is neither limited by conceptions of negligence nor contractual in character." See Seas Shipping Co. v. Sieracki, supra. (Emphasis added.)
This concept takes the case beyond the purview of Florida's Wrongful Death Statute.
Hence, I concur in the opinion prepared by Mr. Justice ROBERTS.
ERVIN, Justice (dissenting).
I am unable to agree with the foregoing opinion insofar as it holds that Florida's Death by Wrongful Act statute (F.S. Section 768.01, F.S.A.) does not incorporate the general maritime law concept of "unseaworthiness" of a vessel.
*168 I agree with the reasoning supplied by Judge Brown in his able dissent in Emerson v. Holloway Concrete Products Company (5th Cir.1960), 282 F.2d 271, 285, to the effect that the specific reference to admiralty proceedings contained in the Florida statute reflects a commanding purpose to "extend to survivors whatever benefit the substantive maritime law would have afforded for maritime injuries."
Prior to 1953, I acknowledge that some doubt could have been raised in opposition to the view that Florida's statute incorporated substantive maritime concepts; or at least some speculation could have been proferred as to the extent of any such incorporation. Thus, before 1953 the enumeration of the terms "wrongful act," "negligence," "carelessness," or "default" may have provided some support for the proposition that the statute only extended to embrace liability concepts sounding in the characteristics suggested by those specific terms; that is, liability predicated on duties responsive to the fault or negligence culpability of the defendant. Accordingly, until 1953 it might have been argued with some force that the purposeful scope of the statute necessarily excluded the maritime doctrine of "unseaworthiness" and other principles which predicate liability on implied warranty theory or which are founded on expanding concepts of "strict liability." It is obvious, however, that whatever notion may have existed prior to 1953 concerning the limited nature of substantive concepts of liability under the statute [see Whiteley v. Webb's City, Inc. (Fla. 1951), 55 So.2d 730] such was clearly expunged by the amendment (Ch. 28280) in 1953 by the Florida Legislature which provided for actions thereunder ex contractu or ex delicto. Under the amendatory clarification as to the intended scope of substantive liability embraced by the statute, this Court has incurred little difficulty in predicating wrongful death recovery on the theory of "implied warranty." See Green v. American Tobacco Co. (Fla. 1963), 154 So.2d 169. In light of these developments, it can no longer be logically asserted that our Wrongful Death Statute is strictly a "Lord Campbell's Act," and thereby exclusive of those substantive liability concepts foreign to the common law at the time of its enactment.
In Seas Shipping Co. v. Sieracki, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099, seaworthiness was said to be a "duty likened to implied contractual warranty." In Strika v. Netherlands Ministry of Traffic, 185 F.2d 555 (2d Cir.1950), cert. den. 341 U.S. 904, 71 S.Ct. 614, 95 L.Ed. 1343 (1950), it was defined as "a relationship giving rise to an implied warranty as between the owner and seaman." Viewed, therefore, in accordance with the crystallized scope of our statute pertaining to the substantive law on which recovery thereunder may be achieved, I am convinced that the statute contemplates the incorporation of the maritime concept of seaworthiness. See Weed v. Bilbrey (Fla.App. 1967), 201 So.2d 771, holding that the statute embraces the maritime doctrine of comparative negligence. By holding otherwise, I feel the majority has unduly restricted the intent embraced by the 1953 amendment to the statute and has placed in doubt, if not departed from, the existing law relating to recovery for death predicated on implied warranties of fitness and suitability or other strict liability concepts. See Toombs v. Ft. Pierce Gas Co. (Fla. 1968), 208 So.2d 615, for example of the expanding development of nonmaritime liability concepts as potential grounds for predicating wrongful death benefits.