80 So.2d 905 (1955)
Robin Clyde SHIVER et al., Appellants,
v.
Lewis B. SESSIONS, as Administrator of the Estate of John Cabble Sessions, Sr., deceased, Appellee.
Supreme Court of Florida. Division A.
June 1, 1955.
Rehearing Denied June 28, 1955.
A.K. Black and J.B. Hodges, Lake City, for appellants.
John E. Norris, Mayo, for appellee.
ROBERTS, Justice.
The plaintiffs are the four surviving minor children of Martha Dona Sessions, deceased, who was shot and killed by her husband (the children's stepfather), who then killed himself. The present action was instituted by them to recover against the estate of their stepfather under the *906 Wrongful Death Act, Sections 768.01 and 768.02, Fla. Stat. 1953, F.S.A., for the damages sustained by them by reason of their mother's death. The trial judge dismissed their complaint upon motion of the defendant, and this appeal followed.
In our Wrongful Death Act, Section 768.01, as in those of many other states, it is provided as a condition of suit that the wrongful act or negligence resulting in death must be such "as would, if the death had not ensued, have entitled the party injured thereby to maintain an action * * * and to recover damages in respect thereof * * *." The trial judge was of the opinion that this provision was a bar to the instant suit, since the plaintiffs' stepfather could not have been sued by their mother during her lifetime on account of his tortious act, and he dismissed the complaint for this reason. So the only question here is whether the plaintiffs' action is barred by the quoted provision of our Wrongful Death Act.
The rule that a husband is immune from liability for torts committed by him against his wife came down to us from the common law, as adopted in this state in 1829, Section 2.01, Fla. Stat. 1953, F.S.A., and it has not been changed by the so-called Married Women's Emancipation Act of 1943, Sections 708.08 and 708.09, Fla. Stat. 1953, F.S.A. Corren v. Corren, Fla. 1950, 47 So.2d 774. The development of the rule at common law is said to have been required by the common-law disability of the wife to own separate property and her lack of capacity to maintain a legal action independently of her husband, so that any recovery on behalf of the wife in a suit against her husband would immediately have become his property and, since he alone could enforce a right of his wife, he would be, in effect, suing himself. See Welch v. Davis, 1951, 410 Ill. 130, 101 N.E.2d 547, 28 A.L.R.2d 656. Even though such common-law disabilities of married women have now been removed in many states, as in Florida, by "Emancipation Acts" such as ours, it is generally held that the rule should still be adhered to, either on the ground that the Emancipation Act in question did not completely destroy the common-law fiction of the unity of husband and wife, or on the ground that domestic tranquillity is fostered by the prohibition of actions by a wife against her husband for his torts against her. See the cases collected in the annotations in 89 A.L.R. 118 and 160 A.L.R. 1406. It was apparently the latter ground which was the basis for our decision in the Corren case, supra.
While the impact of the common-law rule of immunity on an action under the Wrongful Death Act has not heretofore been considered by this court, we have had occasion recently to consider it in another context. Thus, in May v. Palm Beach Chemical Company, Inc., Fla. 1955, 77 So.2d 468, the question was whether the husband's immunity from suit by the wife for his tort would bar a suit by the wife against the husband's employer under circumstances where the employer was legally responsible for the husband's tort. In holding that the husband's personal immunity from suit could not be pleaded by the employer as a defense to the suit, this court quoted from Schubert v. August Schubert Wagon Company, 249 N.Y. 253, 164 N.E. 42, 43, 64 A.L.R. 293, as follows:
"The defendant, to make out a defense, is thus driven to maintain that the act, however negligent, was none the less lawful because committed by a husband upon the person of his wife. This is to pervert the meaning and effect of the disability that has its origin in marital identity.
"A trespass, negligent or willful, upon the person of a wife, does not cease to be an unlawful act, though the law exempts the husband from liability for the damage. Others may not hide behind the skirts of his immunity. * * *"
There is a conflict among the courts of other jurisdictions on the particular question we are here considering. See the cases collected in the annotation in 28 A.L.R.2d page 662 et seq. However, *907 the author of the annotation says at page 666, and we agree, that "It appears to be the recent and well-reasoned trend of the courts to allow recovery against a husband or his estate, in an action by or for the benefit of children for damages sustained by reason of the unlawful killing of their mother."
Thus, in Welch v. Davis, 1951, 410 Ill. 130, 101 N.E.2d 547, 549, 28 A.L.R.2d 656, under facts almost identical with those in the case at bar and under a provision of the Illinois Act very similar to that of the Florida Wrongful Death Act, quoted above, it was held that the husband's immunity could not be pleaded as a defense to a suit by the surviving minor child of the parties against the administrator of the husband's estate. The court said that "An immunity based upon the preservation of marital harmony can have no pertinence in this case, for here the marriage has been terminated, husband and wife are both dead, and the action is brought for the benefit of a third person." The court interpreted the particular provision of the Illinois Wrongful Death Act in question as having to do with the "quality of the conduct" giving rise to a cause of action, and not with a personal immunity which would have barred a suit by the wife against the husband during their lives.
A similar conclusion was reached by the Pennsylvania Supreme Court in Rodney v. Staman, 1952, 371 Pa. 1, 89 A.2d 313, 315, 32 A.L.R.2d 976, where the court was required to interpret the Ohio Wrongful Death Act, which contained a provision almost identical with that of the Florida and Illinois Acts here in question. The court based its decision partly on the same reasoning as that of the Illinois court, quoted above, and also pointed out that the Ohio courts had interpreted their Act as giving rise to an independent action accruing only upon death, and that this in itself was "ample justification for not barring a suit for wrongful death because of personal relationship between the deceased and the tort-feasor."
See also Kaczorowski v. Kalkosinski, 1936, 321 Pa. 438, 184 A. 663, 104 A.L.R. 1267, and Johnson v. Ottomeier, Wash. 1954, 275 P.2d 723, in which a similar conclusion was reached under Wrongful Death Acts which did not contain express language such as that of the Florida Act with which we are here concerned, but which had been interpreted by the courts to the same effect, that is, as requiring that a right to recover must have existed in the injured party in order to entitle those named in the Act to sue for the injured party's death.
We think that the previous decisions of this court respecting the force and effect of the common-law rule of marital immunity in other situations, as well as our previous interpretations of our Wrongful Death Act, lead inevitably to the conclusion that the rule of marital immunity has no application in this case and will not bar the suit.
Thus, it is settled law in this jurisdiction that the wife's disability to sue her husband for his tort is personal to her, and does not inhere in the tort itself. The tortious injury to the wife "`does not cease to be an unlawful act, though the law exempts the husband from liability for the damage.'" May v. Palm Beach Chemical Company, Inc., supra [77 So.2d 468], citing Schubert v. August Schubert Wagon Company, supra. See also Webster v. Snyder, 103 Fla. 1131, 138 So. 755. It is also well settled that our Wrongful Death Act creates in the named beneficiaries "an entirely new cause of action, in an entirely new right, for the recovery of damages suffered by them, not the decedent, as a consequence of the wrongful invasion of their legal right by the tort-feasor." Ake v. Birnbaum, 156 Fla. 735, 25 So.2d 213, 218, 221. This right is "separate, distinct and independent" from that which might have been sued upon by the injured person, had he or she lived. Epps v. Railway Express Agency, Fla. 1949, 40 So.2d 131, 133.
A workable distinction between these two separate and distinct rights of action, *908 on the one hand, and the "original act of negligence of the tortfeasor [which is] the gist of all actions maintainable either by the decedent in his lifetime or by the personal representative and the widow [or other beneficiary under the Wrongful Death Act] after his death," Epps v. Railway Express Agency, supra, on the other, was made by the Ohio Supreme Court in Fielder v. Ohio Edison Co., 158 Ohio St. 375, 109 N.E.2d 855, 859, 35 A.L.R.2d 1365, in considering the Ohio Wrongful Death Act in another context. It was there said that "A right of action is a remedial right affording redress for the infringement of a legal right belonging to some definite person, whereas a cause of action is the operative facts which give rise to such right of action. When a legal right is infringed, there accrues, ipso facto, to the injured party a right to pursue the appropriate legal remedy against the wrongdoer. This remedial right is called a right of action." With this distinction in mind, it is clear that the Legislature intended that the right of action created by the Wrongful Death Act in favor of the named beneficiaries must be predicated upon operative facts which would have constituted a tort against their decedent under established legal principles  in other words, they must state a "cause of action" for tort against the tortfeasor, subject to the defenses of contributory negligence and the like which the tort-feasor could have pleaded in a suit against him by the decedent during his or her lifetime, and this court has so held in many cases. But we think it is unreasonable to imply that the Legislature intended to bar the "right of action" created by the Act on account of a disability to sue which is personal to a party having an entirely separate and distinct "right of action" and which does not inhere in the tort  or "cause of action"  upon which each separate right of action is based.
This is especially true in view of the fact that the reason for the rule of marital immunity automatically disappears from the picture simultaneously with the accrual of the right of action under the Wrongful Death Act. As stated in Welch v. Davis, supra, "An immunity based upon the preservation of marital harmony can have no pertinence in this case, for here the marriage has been terminated, husband and wife are both dead, and the action is brought for the benefit of a third person." We also agree with the Pennsylvania Supreme Court when it said, in Rodney v. Staman, supra: "Moreover, the policy of the Wrongful Death Statute would be unreasonably defeated by adoption of the interpretation contended for by the [appellee]. Unquestionably, a wrong has been done relatives of the wife who fall within the purview of the Act. No good reason exists why a late relationship between the deceased and the tort-feasor should bar the damaged third persons from recovery."
We hold, then, that it cannot reasonably be implied from the terms of the Act that the Legislature intended that the wife's disability to sue her husband should be a bar to a suit under the Act by the wife's surviving children against the deceased husband's estate, and that the lower court erred in so holding
Accordingly, the judgment appealed from is reversed and the cause is remanded for further proceedings.
Reversed and remanded.
DREW, C.J., and TERRELL and SEBRING, JJ., concur.