### HENDERSON v. HENDERSON.

Court of Record, Escambia County.

September 26, 1958.

Forsyth Caro, Pensacola, for plaintiff.

Coe & Coe, Pensacola, for defendant.

ERNEST E. MASON, Judge.

The plaintiff, a minor four years of age, is suing the defendant, his natural father, for damages growing out of the death of his mother caused by the alleged wrongful act of his father. The plaintiff sues by his next friend and grandfather, who also is the legal guardian of his estate by appointment of the county judge of this county subsequent to the death of his mother. It is also alleged that another division of this court has awarded the custody of the minor child to his said grandfather and that by such acts the plaintiff is emancipated from the defendant father's supervision, custody and control. The complaint alleges that before the death of the mother of the plaintiff and wife of the defendant the three were living together as a family, but that the family circle was broken by the alleged wrongful act of the father, in killing the mother, which was done, the complaint alleges, by the alleged willful, wanton and intentional shooting with a gun. It is alleged that the act of killing the mother of the plaintiff did not arise out of the legal or factual relationship of father and child and was in no wise connected with the defendant's right to supervise or control the plaintiff as his minor child. It is alleged that at the time of the killing of the mother she was employed and was actually supporting the plaintiff, and that the plaintiff has lost such support, as well as the security, affection, companionship and care of his mother. For these the plaintiff seeks compensatory as well as punitive damages.

The defendant moves to dismiss the complaint on two grounds — (1) because no right of action exists in an unemancipated minor child against its parent in tort, and (2) because the complaint shows on its face that the plaintiff is not the proper person entitled to sue under the provisions of section 768.02, Florida Statutes 1957. For the purpose of considering the first ground it is conceded that at the time of the alleged tort the plaintiff had not been legally emancipated from the defendant father's control.

We shall treat the two grounds separately. As to both grounds the facts alleged present a case of first impression in this state, we have failed to find any case from Florida exactly on point.

As to the first ground. The cases from other jurisdictions fall into two general classes. One line of cases holds that a minor child cannot sue his parent for a tort committed by the parent against the child at a time when the child was unemancipated, that is to say while the child was under the parental control of the parent.

Another, and in this court's view a more modern, line of cases holds that whether a child is denied the right to sue depends upon whether the tort stemmed from an act committed by the parent in the exercise of his lawful parental control over the child. This line of cases seems to hold that if the tort was committed by the parent in the exercise of such lawful control, the child has no right of action; but if the tort was committed by the parent by means of an act not committed in the exercise of parental control, or if committed in the exercise of parental control but in a malicious or wanton manner, the minor child does have a right of action against the parent. Not being bound by any controlling authority in this state upon this specific question we feel free to adopt that rule which is in our view consonant with reason and justice.

The rule of non-liability is predicated upon the doctrine of preservation of domestic tranquility which doctrine grants to the parent a right of immunity for tortious acts committed against his minor children. It was adopted by the courts as a matter of public policy and its purpose is to uphold, protect and sustain the family unit as a basic, living pillar of society under parental discipline. The decisions denying the right of a child to sue his parent for tortious acts committed against him are not based upon the premise that no wrong has been committed—no cause of action created—but upon the proposition that the relation of child to parent limits the child's right, that would otherwise exist, to demand reparation for unlawful conduct toward him on the part of the parent. In the words of the first reported case in this country, decided by the Supreme Court of Mississippi in 1891, Hewellette v. George, 68 Miss. 703, 9 So. 885, which was a suit by a minor child against the mother for wrongfully and miliciously causing the child to be incarcerated in an insane asylum— ". . . so long as the parent is under obligation to care for, guide, and control, and the child is under reciprocal obligation to aid and comfort and obey, no such action as this can be maintained". The Mississippi court predicated its decision upon what it determined to be public policy, saying that "the peace of society, and of the families composing society, and a sound public policy, designed to subserve the repose of families and the best interests of society, forbid to the minor child a right to appear in court in the assertion of a claim to civil redress for personal injuries suffered at the hands of the parent. The state, through its criminal laws, will give the minor child protection from parental violence and wrong-doing and this is all the child can be heard to demand". Subsequent decisions of other jurisdictions which follow this Mississippi case all predicate the rule of non-liability upon the ground of public policy.

There is another line of cases which, although subscribing to the view that public policy dictates the rule of non-liability where the act constituting the tort was committed in the ordinary case of parental control, refuses to apply such rule to cases of malicious or wanton conduct on the part of the parent in exercising such control or to those cases where the tort was committed outside the relation of parent and child, such for instance as a negligent or willful injury not involving the failure of the child to discharge a duty or obligation toward the parent or the failure of the parent to discharge a parental duty. One of the leading cases adhering to this view is Dunlap v. Dunlap, New Hampshire, 150 A. 905. As applied to the facts alleged in this complaint we are of the opinion that the views set forth in this line of cases are the correct ones for a court in this enlightened age to follow, and we adopt them for purposes of this case.

In reaching this conclusion we concede, of course, that parental authority should be maintained and that the parent should not ordinarily be held accountable to the child for a failure to perform a parental duty, and that vindication of personal rights should not be conceded to the child if it would impair the discharge of such duties. Public policy in such a situation dictates that the tranquility of the home is superior to the rights of the child to civil redress. Thus for mistaken judgment as to the extent of chastisement, or for negligence of the parent in making provision for the support of the child, there should be no liability. But for wanton, willful or wanton acts—and particularly where such act is alleged to have been committed outside the relation of parent and child as is the case here—we see no logical reason why the rule of non-liability should apply. If the rule of non-liability is predicated upon the desire of the sovereign to preserve the family home as the basic unit of society as all of the cases so hold, then when the very act which is complained of as constituting the tort against the child has had the effect of permanently destroying the substance of the family relation the reason for the rule ceases to exist. And it is elementary that when the reason for any rule ceases the rule should be discarded. We think that as applied to the facts as alleged in this case the reason for the rule of non-liability has ceased and that the child should have a right of redress against the father if the facts develop at the trial as they are alleged in the complaint. Though not disagreeing with the necessity of granting a parent such immunity as may be necessary to retain the cohesiveness of the family as the most important basic unit of society, this court is of the opinion that it was never intended that such doctrine should become a protective cloak, under civil law, for willful and wanton offenses.

It is generally a wholesome rule to grant the parent immunity from unintentional or negligent personal torts which occur within the scope of domestic relations. The security, peace and tranquility of the home, being the very foundation upon which our society rests, must be protected. But where one parent deliberately and willfully shoots and kills the other parent as alleged in this complaint thereby not only breaking up the family unit but also depriving the child of the support, care, guidance, comfort and companionship of the other parent, he forfeits all claim to immunity. In the words of the nisi prius decision in Henderson v. Henderson, Supreme Court of New York, Kings County, 169 N. Y. S. 2d 106, at page 114—"A suit upon behalf of the infant cannot properly be deemed the disrupting cause of the family's disunity when the parent by his misdeeds has already caused the tranquility of the family unit to be disturbed and shattered. It would be a distinct disservice not only to the family, but to the state, to place the court's stamp of approval upon the individual who betrayed his trust by maliciously causing injury to his child or ward". The complaint at bar contains enough factual averments of the defendant's willful misconduct which, if proven, are sufficient to sustain it against this particular ground of attack.

The second ground of the attack upon the complaint raises the right of the plaintiff to bring this suit under the Death by Wrongful Act Statute of Florida in view of the fact that the defendant as surviving spouse is first in line of succession to his deceased wife under this statute. Here again we have no Florida decision exactly on point. However, there are decisions of the Florida Supreme Court which follow a line of reasoning which leads this court to conclude that under the particular factual situation here involved the child should not be denied a right of redress where the wrongful death of his mother is alleged to have come about by the wrongful act of the father who ordinarily is first in line of succession under our statute. Of course the father cannot—or would not—sue himself for the benefit of his child under the statute. Therefore, to deny the child the right to sue in such a situation would amount to a denial to him of his rights under section 4 of the Declaration of Rights contained in the Florida Constitution. This section declares that—"All courts in this state shall be open, so that every person for any injury done him in his lands, goods, person or reputation shall have remedy, by due course of law, and right and justice shall be administered without sale, denial or delay".

We can conceive of cases where even under the broad interpretations accorded this provision of the Florida bill of rights by our Supreme Court there might be causes of action without

available remedies for their redress, but we cannot conceive that a court of justice would deny to a minor child a remedy for the wrongful death of his parent where the very person who is charged under the Florida statute with suing in his behalf for a redress of his wrong is in fact the wrongdoer.

We have a decision from Florida which although not exactly on point is authority for the right of the child to sue in this case. In Haddock v. Florida Motor Lines Corporation, 9 So. 2d 98, decided in 1942, the Supreme Court in construing section 768.03, Florida Statutes, which is the section granting a right of action for the wrongful death of a child, held that even though under that statute the first in line of succession was the father of the child, yet where the father and mother were divorced and the custody of the child was by the divorce proceeding awarded the mother, the mother could sue the wrongdoer despite the fact the father was still living, and therefore first entitled to sue under the statute. The Court said—"Here, the intent of the legislature to grant the *cause of action* is clear and unmistakable. The only question is, who shall exercise the *right of action*. If by construction we leave the right to prosecute the action in one who no longer is related to the mother and one who is in many instances hostile to her, we thereby close the door and *deprive her of a remedy* by due course of law". (Italics added.) A fortiori, under section 768.02 if the child cannot sue because he is subordinate in line of succession to the father where the father himself is the one charged with having brought about the wrongful death of the wife and mother, then he is deprived of a remedy by due course of law.

In those cases where a stranger to the family circle is the party responsible for the wrongful death of the wife and mother, one of the elements of damage for which the father and surviving spouse is entitled to recover under section 768.02 is for services ordinarily performed by the deceased wife in the care and moral training of the minor children of the household. Here it is alleged that the father has deprived the plaintiff of these services by his alleged wrongful act. To deny the child the remedy of suit against the father because the father precedes him in line of succession under the statute would deny the plaintiff his remedy by due course of law and subject the court to a just charge of engaging in sophistry and quibble.

That the Supreme Court of Florida would probably uphold a right of action by the minor child against his father under circumstances such as alleged in the complaint at bar is further attested by language, though obiter dicta, contained in the opinion

rendered by it in the rather recent case of Shiver v. Sessions, 80 So. 2d 905, where the court upheld a right of action by the wife's surviving minor children against the estate of her husband who had committed suicide after shooting and killing the wife. Quoting from an annotation contained in 28 A. L. R., the court said— "It appears to be the recent and well-reasoned trend of the courts to allow recovery against a husband or his estate, in an action by or for the benefit of children for damages sustained by reason of the unlawful killing of their mother." Therefore, the court concludes that the second ground of the motion is not well founded and that the Death by Wrongful Act Statute does not preclude the plaintiff from instituting this action.

The motion to dismiss the claim for compensatory damages is denied. The motion to strike paragraph 5 of the first count of the amended complaint becomes moot, in view of the court's ruling on the motion to dismiss. It is likewise denied.

The second count of the amended complaint seeks the recovery of punitive damages. This count must be dismissed for punitive damages are not recoverable under the Death by Wrongful Act Statute (see Florida East Coast Ry. Co. v. McRoberts, 149 So. 631). It is so ordered.

The defendant is allowed 15 days in which to plead further to the amended first count of the complaint.