728 So.2d 272 (1999)
ENTERPRISE LEASING COMPANY, a Florida corporation, Appellant,
v.
C. Todd ALLEY, as Personal Representative of the Estate of Lenna Peoski, deceased, Appellee.
No. 97-04750.
District Court of Appeal of Florida, Second District.
February 3, 1999.
Rehearing Denied February 26, 1999.
Michael A. Tonelli of Barr, Murman, Tonelli, Herzfeld & Rubin, Tampa, for Appellant.
Joel D. Eaton of Podhurst, Orseck, Josefsberg, Eaton, Meadow, Olin & Perwin, P.A., Miami, and Wagner, Vaughan & McLaughlin, P.A., Tampa, for Appellee.
CAMPBELL, Judge.
This is an action arising out of a single-vehicle automobile accident that killed Lenna Peoski, the mother of two minor children. In this appeal, the lessor of the automobile, appellant, Enterprise Leasing Company, challenges the final judgment allowing the two minor children to recover from Enterprise under the Wrongful Death Act. We conclude that although the deceased mother would have had no right of action against appellant had she survived, since the underlying cause of action remained viable, her survivors' wrongful death action also survives. Accordingly, we affirm.
On December 22, 1995, Lenna and James Peoski, husband and wife, rented an automobile in Tampa, Florida, from appellant. Mr. Peoski signed the lease agreement, and Mrs. Peoski was listed as an authorized additional driver. It is not disputed that Mr. and Mrs. Peoski were co-bailees of this rented automobile. Mr. and Mrs. Peoski and their two minor children, Joseph and Karolyn Peoski, traveled in appellant's leased automobile to Lexington, Kentucky. On the December 29, 1995, return trip, Mr. Peoski was driving the automobile south on 1-75 near Dalton, Georgia, when he fell asleep at the wheel, causing the automobile to veer off the highway and crash into a guardrail. Mrs. Peoski died as a result of injuries she sustained in the accident. *273 Mr. Peoski and the two children survived. Appellee, C. Todd Alley, as Personal Representative of the Estate of Lenna Peoski, deceased, filed a wrongful death action against appellant as owner of the vehicle, alleging that Mr. Peoski's negligent operation of the vehicle caused the accident and Mrs. Peoski's resulting death. Judgment was eventually recovered under the Wrongful Death Act on behalf of Mrs. Peoski's estate and each of her two minor children. Mr. Peoski was not named as a party defendant by appellee, nor was he a beneficiary of the judgment.
Appellant presents several established principles that, appellant argues, prevent recovery by Mrs. Peoski's children under the Wrongful Death Act. We will discuss those principles and explain why we conclude they do not defeat the judgment obtained in this case.
The issue before us depends upon the construction of the language of the Wrongful Death Act, which conditions a decedent's survivors' cause of action upon the right of the decedent, if the decedent had lived, to have maintained an action and recovered damages arising out of the event. The Wrongful Death Act, section 768.19, Florida Statutes (1995), provides in part:
[W]hen the death of a person is caused by the wrongful act, negligence, default, or breach of contract or warranty of any person, including those occurring on navigable waters, and the event would have entitled the person injured to maintain an action and recover damages if death had not ensued, the person or watercraft that would have been liable in damages if death had not ensued shall be liable for damages as specified in this act notwithstanding the death of the person injured, although death was caused under circumstances constituting a felony.
(Emphasis supplied.)
Appellant contends that the Dangerous Instrumentality Doctrine would have prevented the decedent from maintaining an action, thus preventing her survivors from recovering. Specifically, it is appellant's position that, under the Dangerous Instrumentality Doctrine, while an owner/lessor is liable to third persons who are injured as a result of the negligence of a lessee/operator of a leased vehicle, Ray v. Earl, 277 So.2d 73 (Fla. 2d DCA 1973), an owner/lessor is not liable for the injuries of a co-bailee that result from the bailee's negligent operation of the leased vehicle. See Raydel, Ltd. v. Medcalfe, 178 So.2d 569 (Fla.1965). As a cobailee, the decedent could not recover from appellant, thus precluding her children from recovering. The Raydel court held:
[W]e do not believe the dangerous instrumentality doctrine applies where an automobile is entrusted to a husband and wife jointly and while it is in their personal use and under their dominion and control it is negligently operated by one of them, injuring one or both of them. Under such circumstances recovery for such injuries cannot be had by either or both of them from the owner of the automobile.

178 So.2d at 572 (emphasis supplied). The rationale of the Raydel rule is explained further in State Farm Mutual Automobile Insurance Co. v. Clauson, 511 So.2d 1085 (Fla. 3d DCA 1987), where the court stated:
To the same extent as the owner, a bailee (or sub-bailee) of a motor vehicle is liable to third persons under the dangerous instrumentality doctrine for the negligence of one to whom he has entrusted it. Thus, if Mr. Clauson had injured a pedestrian or another driver, not only We Try Harder but Mrs. Clauson (and her employer as well) would be vicariously responsible for his negligence. In the present instance, however, in which the bailee, Mrs. Clauson, has, in effect, sued We Try Harder for Mr. Clauson's negligence, she is barred by the fact that his negligence is imputed directly to her and is, as it were, stopped on its attempted way up the chain of responsibility before it reaches the owner ...
511 So.2d at 1086 (emphasis supplied; footnote and citations omitted).
Relying on the authority of such cases as Variety Children's Hospital v. Perkins, 445 So.2d 1010 (Fla.1983), McCoy v. Hollywood Quarries, Inc., 544 So.2d 274 (Fla. 4th DCA 1989), Kirchner v. Aviall, Inc., 513 So.2d 1273 (Fla. 1st DCA 1987), Hudson v. Keene *274 Corp., 445 So.2d 1151 (Fla. 1st DCA 1984), appellant argues that the very language of the Wrongful Death Act prevents recovery under the Act by Mrs. Peoski's children where Mrs. Peoski herself, had she survived, would have been unable to recover.
Appellant also argues that the doctrine of parental immunity should prevent appellee from recovering against appellant. There is no evidence in this case of any insurance coverage available to Mr. Peoski. In Ard v. Ard, 414 So.2d 1066 (Fla.1982), our supreme court held:
[I]n a tort action for negligence arising from an accident and brought by an unemancipated minor child against a parent, the doctrine of parental immunity is waived to the extent of the parent's available liability insurance coverage. If the parent is without liability insurance, or if the policy contains an exclusion clause for household or family members, then parental immunity is not waived and the child cannot sue the parent.
414 So.2d at 1066-67.
Appellant argues that Ard would prevent the Peoski children from suing Mr. Peoski directly, but, because appellant has indemnification claims against Mr. Peoski, the children are doing indirectly what they could not do directly. Appellee, on the other hand, persuasively argues that the trial judge was correct in allowing appellee's actions below to proceed to judgment on the authority of Dressler v. Tubbs, 435 So.2d 792 (Fla.1983), Shiver v. Sessions, 80 So.2d 905 (Fla.1955), and May v. Palm Beach Chemical Co., 77 So.2d 468 (Fla.1955).
Any attempt to establish a bright line rule or to completely reconcile the circumstances and language of all the cases bearing upon the issue before us is, to say the least, difficult and challenging. Yet, we conclude that the holdings of the controlling and pertinent cases are not totally irreconcilable. The exact issue presented to us has not previously been expressly ruled upon. We conclude, however, that Dressler and Shiver remain the best authority and most nearly on point when considered in light of the purposes of the Wrongful Death Act consistently stated in the later cases.
It is eminently clear to us, as stated by then Justice Ehrlich in his concurring opinion in Perkins, that a "wrongful death action is not derivative, but it is remedial and should be construed to fulfill its remedial function." 445 So.2d 1010, 1012. The Wrongful Death Act has been consistently held to create an entirely new and independent cause of action and an entirely new right in the statutory beneficiaries. See Nissan Motor Co. v. Phlieger, 508 So.2d 713 (Fla.1987); Perkins; Shiver.
If a wrongful death action is not derivative, what then under the Wrongful Death Act is the nature of a decedent's rights, if the decedent survived, that will either permit or preclude the survivors' action? Shiver seems to be the seminal case that provides the best answer to that question. The answer depends on whether, at the time of the decedent's death, there existed, had the decedent survived, either a "cause of action" or a "right of action" that would support an action for damages for the injuries of the decedent that resulted in death. If a cause of action would have existed, even if the right of action were extinguished, the survivors' wrongful death action survives.
The cases relied upon by appellant to prevent a survivor's action all seem to turn on the fact that the "cause of action" was barred or had been satisfied or eliminated so that it no longer existed. The lack of the ability to sue in that instance inheres in the tort itself. On the other hand, the survivor's right of action is not lost where the viability of the tort so as to support a "cause of action" is not dissipated, but only a "right of action" in the decedent has been lost because of a disability to sue which is personal to the decedent and does not inhere in the tort or cause of action upon which the survivor's separate "right of action" is premised. See Shiver, 80 So.2d 905, 907. As stated in Perkins, 445 So.2d 1010, at 1012:
At the moment of his death the injured minor Anthony Perkins had no right of action against the tortfeasor because his cause of action had already been litigated, proved and satisfied..... Since there was no right of action existing at the time *275 of death [because the cause of action had been satisfied], under the statute no wrongful death cause of action survived the decedent.
(Emphasis supplied; citations omitted.)
In citing Shiver with approval and quoting the above statement from Perkins with approval, our supreme court in Phlieger cautions against narrowly interpreting Perkins as follows:
The district court reasoned that since this action was a wrongful death action pursuant to section 768.19 rather than a products liability action, "by its very language, section 95.031(2) does not apply and, rather, the two year statute of limitations for wrongful death actions found in section 95.11(4)(d) applies." 487 So.2d at 1097. Nissan concedes that it is section 95.11(4)(d) rather than section 95.11(3) which is the applicable statute of limitations in this action but argues that the twelve-year statute of repose set forth in section 95.031(2) applies to bar what Nissan characterizes as the underlying products liability cause of action. Nissan maintains that the district court confused the concepts of a "right of action" and a "cause of action." It contends that Florida's Wrongful Death Act simply gives the designated beneficiaries a right of action based on the decedent's underlying products liability cause of action. Thus, according to Nissan, because the underlying products liability action is barred by section 95.031(2), Mrs. Phlieger has a right of action but has no viable cause of action. Nissan relies heavily on this Court's decisions in Variety Children's Hospital v. Perkins, 445 So.2d 1010 (Fla.1983), and Ash v. Stella, 457 So.2d 1377 (Fla.1984), for the position that Florida's Wrongful Death Act does not create a cause of action separate and distinct from that which the decedent could have maintained had he lived. We reject this narrow interpretation of Florida's Wrongful Death Act and agree with the district court that our decisions in Perkins and Ash "actually support Mrs. Phlieger's position." 487 So.2d at 1098.
Florida's Wrongful Death Act does create a right of action in favor of statutory beneficiaries which was not recognized at common law. Florida East Coast Ry. v. McRoberts, 111 Fla. 278, 149 So. 631 (1933); Perkins, 445 So.2d at 1012.... Martin v. United Security Services, Inc., 314 So.2d 765 (Fla.1975); Stokes v. Liberty Mutual Insurance Co., 213 So.2d 695 (Fla. 1968); Shiver v. Sessions, 80 So.2d 905 (Fla.1955); Epps v. Railway Express Agency, 40 So.2d 131 (Fla.1949); Ake v. Birnbaum, 156 Fla. 735, 25 So.2d 213 (1945). Neither Ash nor Perkins should be read to have held to the contrary.
508 So.2d at 714 (footnotes omitted). We conclude that Shiver contains the definitive discussion concerning the continued existence of a "cause of action" so as to support a survivor's wrongful death claim where the survivor's decedent's "right of action" has been lost. Our supreme court there said:
Thus, it is settled law in this jurisdiction that the wife's disability to sue her husband for his tort is personal to her, and does not inhere in the tort itself. The tortious injury to the wife "does not cease to be an unlawful act, though the law exempts the husband from liability for the damage." May v. Palm Beach Chemical Company, Inc., supra (77 So.2d [at] 470), citing Schubert v. August Schubert Wagon Company, supra[ 249 N.Y. 253, 164 N.E. 42 (1928)]. See also Webster v. Snyder, 103 Fla. 1131, 138 So. 755. It is also well settled that our Wrongful Death Act creates in the named beneficiaries "an entirely new cause of action, in an entirely new right, for the recovery of damages suffered by them, not the decedent, as a consequence of the wrongful invasion of their legal right by the tort-feasor." Ake v. Birnbaum, 156 Fla. 735, 25 So.2d 213, 218, 221. This right is "separate, distinct and independent" from that which might have been sued upon by the injured person, had he or she lived. Epps v. Railway Express Agency, Fla.1949, 40 So.2d 131, 133.
A workable distinction between these two separate and distinct rights of action, on the one hand, and the "original act of negligence of the tortfeasor [which is] the gist of all actions maintainable either by the decedent in his lifetime or by the personal *276 representative and the widow [or other beneficiary under the Wrongful Death Act] after his death," Epps v. Railway Express Agency, supra, on the other, was made by the Ohio Supreme Court in Fielder v. Ohio Edison Co., 158 Ohio St. 375, 109 N.E.2d 855, 859, 35 A.L.R.2d 1365, in considering the Ohio Wrongful Death Act in another context. It was there said that "A right of action is a remedial right affording redress for the infringement of a legal right belonging to some definite person, whereas a cause of action is the operative facts which give rise to such right of action. When a legal right is infringed, there accrues, ipso facto, to the injured party a right to pursue the appropriate legal remedy against the wrongdoer. This remedial right is called a right of action." With this distinction in mind, it is clear that the Legislature intended that the right of action created by the Wrongful Death Act in favor of the named beneficiaries must be predicated upon operative facts which would have constituted a tort against their decedent under established legal principles-in other words, they must state a "cause of action" for tort against the tortfeasor, subject to the defenses of contributory negligence and the like which the tort-feasor could have pleaded in a suit against him by the decedent during his or her lifetime, and this court has so held in many cases. But we think it is unreasonable to imply that the Legislature intended to bar the "right of action" created by the Act on account of a disability to sue which is personal to a party having an entirely separate and distinct "right of action" and which does not inhere in the tortor "cause of action"upon which each separate right of action is based.
80 So.2d 905, 907-08.
We therefore conclude that in a wrongful death action a tort-feasor's exemption of immunity from suit for reasons personal to a decedent will not bar the survivor's action against that tort-feasor. If only the individual "right of action" of the decedent is lost for reasons personal to the decedent and the underlying "cause of action" remains viable, the survivor's wrongful death cause of action will survive.
Affirmed.
PARKER, C.J., and QUINCE, PEGGY A., Associate Judge, Concur.