833 So.2d 109 (2002)
Richard TOOMBS, etc., Petitioner,
v.
ALAMO RENT-A-CAR, INC., Respondent.
No. SC00-1755.
Supreme Court of Florida.
October 31, 2002.
William L. Petros, P.A., Miami, FL; and Ralph O. Anderson and Dinah S. Stein of Hicks, Anderson & Kneale, P.A., Miami, FL, for Petitioner.
Daniel S. Pearson and Lenore C. Smith of Holland & Knight LLP, Miami, FL; *110 and Walter A. Ketcham, Jr. and David W. Henry of Grower, Ketcham, More', Rutherford, Noecker, Bronson & Eide, P.A., Orlando, FL, for Respondent.
Joel D. Eaton of Podhurst, Orseck, Josefsberg, Eaton, Meadow, Olin & Perwin, P.A., Miami, FL, for the Academy of Florida Trial Lawyers, Amicus Curiae.
Warren B. Kwavnick of Cooney, Mattson, Lance, Blackburn, Richards & O'Connor, P.A., Fort Lauderdale, FL, for the Florida Defense Lawyers Association.
Michael A. Tonelli of Barr, Murman, Tonelli, Slother & Sleet, Tampa, FL, for The Rental Car Association of South Florida, Inc.
PER CURIAM.
We have for review the decision in Toombs v. Alamo Rent-A-Car, 762 So.2d 1040 (Fla. 5th DCA 2000), which certified conflict with the decision in Enterprise Leasing Co. v. Alley, 728 So.2d 272 (Fla. 2d DCA 1999). We have jurisdiction. See art. V, § 3(b)(4), Fla. Const.

FACTS
The petitioner, Richard Toombs, personal representative of the estate of Julia Stuttard, filed a wrongful death action against Alamo Rent-A-Car seeking damages on behalf of her two surviving minor children. Julia Stuttard was killed in a car accident while a passenger in an Alamo automobile rented and driven by her husband, Ian Stuttard. Her husband and their two minor children, who were also passengers in the car, survived.[1] Recovery was sought on the basis of the dangerous instrumentality doctrine.[2]
Alamo moved for summary judgment on the ground that Julia Stuttard, as co-bailee of Alamo's vehicle, could not rely on the dangerous instrumentality theory because the injury occurred while the vehicle was in her possession. Stated differently, Alamo argued that because Julia Stuttard would have been unable to maintain an action and recover damages against it under the dangerous instrumentality doctrine as a co-bailee of the rental car, neither could her survivors under the Wrongful Death Act. The trial court granted Alamo's motion for summary judgment.[3]
On appeal, Toombs argued that the case was controlled by Enterprise Leasing Co. v. Alley, 728 So.2d 272 (Fla. 2d DCA 1999). In Alley the Second District, under circumstances practically identical to those in the instant case, allowed a wrongful death action against a rental car company to *111 stand despite the decedent's status as a cobailee of the rental car: "We conclude that although the deceased mother would have no right of action against [Enterprise] had she survived, since the underlying cause of action remained viable, her survivors' wrongful death action also survives." Id. at 272.
The Fifth District rejected Alley, concluding that Stuttard's status as co-bailee prevented a cause of action from existing altogether. See Toombs v. Alamo Rent-A-Car, 762 So.2d 1040, 1042 (Fla. 5th DCA 2000). Accordingly, the Fifth District affirmed the trial court's order granting summary judgment and certified conflict with Alley. Id.[4]

ANALYSIS
Section 768.19, Florida Statutes (1995), which defines the right of action under the Wrongful Death Act (the Act), provides:
When the death of a person is caused by the wrongful act, negligence, default, or breach of contract or warranty of any person, including those occurring on navigable waters, and the event would have entitled the person injured to maintain an action and recover damages if death had not ensued, the person or watercraft that would have been liable in damages if death had not ensued shall be liable for damages as specified in this act notwithstanding the death of the person injured, although death was caused under circumstances constituting a felony.
§ 768.19, Fla. Stat. (1995).[5] Resolution of the conflict between Alley and the instant case revolves around the language in the second clause, which conditions the right of action created under the Act on the decedent's entitlement to "maintain an action and recover damages if death had not ensued."

NATURE OF THE ACTION CREATED UNDER THE WRONGFUL DEATH ACT
An action for wrongful death is a purely statutory right. See, e.g., Florida East Coast Ry. v. McRoberts, 111 Fla. 278, 149 So. 631, 632 (1933). Although such an origin ordinarily requires strict construction under traditional rules of construction, the legislature has expressly provided that the Act should be liberally construed to effect its remedial purposes. See § 768.17, Fla. Stat. (2001); see also, Stern v. Miller, 348 So.2d 303, 308 (Fla.1977).[6]
In that vein, this Court has long characterized the Act as creating a new and distinct right of action from the right of action the decedent had prior to death. In Florida East Coast Railway v. McRoberts, 111 Fla. 278, 149 So. 631 (1933), this Court, in addressing the import of the second clause of the Act, explained:
The fact that the statute provides that an action for death by wrongful act can be maintained by the statutory beneficiaries only when the alleged wrongful death has been caused under such circumstances as would have entitled the *112 injured party himself to maintain an action had he lived is simply a regulation of, and a limitation on, the new statutory right of action created.
Sections 4960, 4961, R.G.S., sections 7047, 7048, C.G.L., the Florida death by wrongful act statutes, do not purport to transfer to the statutory representatives of a person killed by another's wrongful act the right of action which the injured party might have maintained for his injury had he lived, but those sections gave to such statutory representatives, subject to terms, conditions and limitations of the statute, a totally new right of action for the wrongful death, and that on different principles.

Id. at 633 (emphasis added).
In Ake v. Birnbaum, 156 Fla. 735, 25 So.2d 213 (1946) (on rehearing), we again emphasized the distinct nature of an action for wrongful death under our statutory scheme:
It will be observed that the statute gives a right of action to certain statutory beneficiaries for the recovery of damages suffered by them by reason of the death of the party killed; but it makes no provision for the recovery of the damages suffered by the injured person by reason of the injury inflicted upon him. Nor was the death by wrongful act statute ever intended to afford such a remedy. It was not the purpose of the statute to preserve the right of action which the deceased had and might have maintained had he simply been injured and lived; but to create in the expressly enumerated beneficiaries an entirely new cause of action, in an entirely new right, for the recovery of damages suffered by them, not the decedent, as a consequence of the wrongful invasion of their legal right by the tortfeasor.
Id. at 221; accord, e.g., Bilbrey v. Weed, 215 So.2d 479 (Fla.1968); Stokes v. Liberty
Mut. Ins. Co., 213 So.2d 695 (Fla.1968); Moragne v. State Marine Lines, Inc., 211 So.2d 161 (Fla.1968); Shearn v. Orlando Funeral Home, Inc., 88 So.2d 591 (Fla. 1956); Brailsford v. Campbell, 89 So.2d 241 (Fla.1956); Klepper v. Breslin, 83 So.2d 587 (Fla.1955); Parker v. City of Jacksonville, 82 So.2d 131 (Fla.1955); Shiver v. Sessions, 80 So.2d 905 (Fla.1955); Epps v. Railway Express Agency, Inc., 40 So.2d 131 (Fla.1949).
It is this characterization of the right of action created under the Act that comprises the fulcrum of the petitioner's claim that a right of action for wrongful death survived the decedent in the instant case. Specifically, the petitioner argues that this Court's decision in Shiver v. Sessions precludes the decedent's status as a co-bailee of the rental car from barring the right of the survivors to maintain an action for wrongful death. The petitioner reads Shiver too broadly.

SHIVER V. SESSIONS
In Shiver, four surviving minor children brought a wrongful death action against the estate of their stepfather, who had shot and killed their mother and then killed himself. The trial judge dismissed the suit, finding the plaintiffs barred from maintaining suit for the wrongful death of their mother as interspousal immunity would have prevented her from maintaining an action against their stepfather. This Court reversed, characterizing the interspousal immunity defense as personal to the decedent, not inhering in her husband's tortious act, and therefore incapable of barring the plaintiffs' independent right of action for wrongful death:
Thus, it is settled law in this jurisdiction that the wife's disability to sue her husband for his tort is personal to her, and does not inhere in the tort itself. The tortious injury to the wife "does not *113 cease to be an unlawful act, though the law exempts the husband from liability for the damage." It is also well settled that our Wrongful Death Act creates in the named beneficiaries "an entirely new cause of action, in an entirely new right, for the recovery of damages suffered by them, not the decedent, as a consequence of the wrongful invasion of their legal right by the tort-feasor." This right is "separate, distinct and independent" from that which might have been sued upon by the injured person, had he or she lived.
80 So.2d at 908 (citations omitted).
Relying heavily on this distinction, the Second District in Alley allowed a wrongful death action against a rental car company to proceed despite the fact that the decedent would have been unable to maintain an action as a co-bailee of the subject rental car. The decedent in Alley was killed in a single vehicle accident when her husband fell asleep at the wheel and crashed the rental car into a guard rail. The decedent's husband and two minor children, who were also passengers in the automobile, survived. The Alley court rejected the rental company's claim that the wrongful death action on behalf of the surviving children was barred given that the decedent was a co-bailee of the rental vehicle,[7] explaining:
It is eminently clear to us, as stated by then Justice Ehrlich in his concurring opinion in Perkins, that a "wrongful death action is not derivative, but it is remedial and should be construed to fulfill its remedial function." The Wrongful Death Act has been consistently held to create an entirely new and independent cause of action and an entirely new right in the statutory beneficiaries.
If a wrongful death action is not derivative, what then under the Wrongful Death Act is the nature of a decedent's rights, if the decedent survived, that will either permit or preclude the survivors' action? Shiver seems to be the seminal case that provides the best answer to that question. The answer depends on whether, at the time of the decedent's death, there existed, had the decedent survived, either a "cause of action" or a "right of action" that would support an action for damages for the injuries of the decedent that resulted in death. If a cause of action would have existed, even if the right of action were extinguished, the survivors' wrongful death action survives.
The cases relied upon by appellant to prevent a survivor's action all seem to turn on the fact that the "cause of action" was barred or had been satisfied or eliminated so that it no longer existed. The lack of the ability to sue in that instance inheres in the tort itself. On the other hand, the survivor's right of action is not lost where the viability of the tort so as to support a "cause of action" is not dissipated, but only a "right of action" in the decedent has been lost because of a disability to sue which is personal to the decedent and does not inhere in the tort or cause of action upon which the survivor's separate "right of action" is premised.
Id. at 274.
Consistent with Alley the petitioner contends that the decedent's co-bailee status, like the defense of interspousal immunity confronted in Shiver, is best characterized as a disability to sue personal to the decedent and therefore incapable of precluding *114 survivors from maintaining an action for wrongful death. This argument, however, overlooks the genesis of the distinction drawn in Shiver.
At the heart of the distinction drawn in Shiver was this Court's recognition that the policies engendered by interspousal immunity were of no moment in the action for wrongful death:
This is especially true in view of the fact that the reason for the rule of marital immunity automatically disappears from the picture simultaneously with the accrual of the right of action under the Wrongful Death Act. As stated in Welch v. Davis[, 410 Ill. 130, 101 N.E.2d 547 (1951)], supra, "An immunity based upon the preservation of marital harmony can have no pertinence in this case, for here the marriage has been terminated, husband and wife are both dead, and the action is brought for the benefit of a third person."
80 So.2d at 908; see also Toombs, 762 So.2d at 1043 (Harris, J., concurring specially).[8] Similar policy concerns are not implicated by a consideration of the decedent's co-bailee status. Moreover, we have revisited the distinction drawn in Shiver between disabilities to sue personal to the decedent and defenses inhering in the cause of action on only one occasion. See Dressler v. Tubbs, 435 So.2d 792 (Fla. 1983). Significantly, in Dressler we were again grappling with the role of interspousal immunity in an action for wrongful death.
In Dressler a husband and wife were killed in the crash of a plane piloted by the husband. The personal representative of the wife's estate brought suit on behalf of the estate and the wife's heirs against her husband's estate to the extent of available liability insurance coverage on the aircraft. The trial court dismissed the suit, holding that it was barred by the doctrines of interspousal and interfamily tort immunity. On appeal, the Fifth District reversed and we approved their decision on the strength of Shiver. See Dressler, 435 So.2d at 793-94.[9]
Indeed, our most recent inquiries into the wrongful death right of action confirm Shiver and Dressler's status as a sport in this Court's wrongful death jurisprudence *115 crafted to address the vagaries inherent in an application of interspousal immunity to bar an action for wrongful death, but illsuited for general application to the consideration of wrongful death actions.[10] This Court's post-Shiver determination of whether a right of action for wrongful death attached in the statutory survivors has focused on the existence of a right of action in the decedent at his or her death, not the distinction between personal disabilities to sue and defenses inhering in the underlying cause of action which guided our inquiry in Shiver.

POST-SHIVER CASES
In Variety Children's Hospital v. Perkins, 445 So.2d 1010 (Fla.1983), we held that a father's wrongful death action on behalf of his deceased minor son was barred because his son had recovered a judgment for personal injuries flowing from the same tortious act underlying the wrongful death action. In the prior personal injury action the decedent recovered damages for his injuries and his parents recovered damages for past and future medical expenses. Accordingly, the defendant argued, inter alia, that the father's cause of action had already been satisfied. The trial court agreed, dismissing the action, and the Third District reversed, reasoning that "the right to recover for wrongful death is separate and independent from, rather than derivative of, the injured person's right while living to recover for personal injuries." Id. at 1011. We quashed the district court's decision, "hold[ing] that the judgment for personal injuries rendered in favor of the injured party while living barred the subsequent wrongful death action based on the same tortious conduct." Id.
This Court explained that at his death, the decedent had no right of action against the tortfeasor because his cause of action had already been satisfied; therefore, no cause of action for wrongful death survived the decedent:
At the moment of his death the injured minor Anthony Perkins had no right of action against the tortfeasor because his cause of action had already been litigated, proved and satisfied. The recovery awarded by the judgment in the previous personal injury action included damages arising from future expenses. Since there was no right of action existing at the time of death, under the statute no wrongful death cause of action survived the decedent.

Id. at 1012 (emphasis added).[11]
Next, in Ash v. Stella, 457 So.2d 1377 (Fla.1984), we addressed whether the statute of limitations pertinent to medical malpractice actions was applicable to an action for wrongful death where the tort underlying the wrongful death action involved a claim of medical malpractice. Although we framed the issue as "whether a survivor can bring a wrongful death action in cases where if the decedent had survived, the decedent would have been precluded from filing suit because of the statute of limitations," id. at 1378-79, this Court did not reach that question. Instead this Court held that, by its very language, the medical malpractice statute of limitations applied to actions for wrongful death. Id. *116 at 1379.[12]
The question that went unanswered in Ash was answered in Hudson v. Keene Corp., 445 So.2d 1151 (Fla. 1st DCA 1984), approved, 472 So.2d 1142 (Fla.1985). In Hudson the First District affirmed the summary judgment entered in favor of the defendant, holding that since the statute of limitations applicable to the decedent's personal injury action had expired at the time of his death, the wrongful death action based on the same tortious conduct (although filed within the limitations period applicable to wrongful death actions) was likewise barred:
[T]he circuit judge in the present case properly granted appellees' motion for summary judgment, because under the supreme court interpretation of the statutory language [of the Wrongful Death Act] in Perkins, Ela Hudson would not have been able to maintain an action against appellees if death had not ensued due to the running of the limitations period with regard to the personal injury suit.
Hudson, 445 So.2d at 1153.
In Nissan Motor Co. v. Phlieger, 508 So.2d 713 (Fla.1987), we held that the products liability statute of repose was inapplicable to bar an action for wrongful death based on products liability. The plaintiff filed a wrongful death action within two years of her husband's death. However, Nissan argued that the action was barred because it was filed more than twelve years after the purchase of the vehicle. The trial court granted Nissan's motion for summary judgment, but the district court reversed, holding the products liability statute of repose inapplicable by its very language to wrongful death actions. Nissan argued to the contrary on the strength of this Court's decisions in Ash and Perkins, but this Court rejected those arguments: "Florida's Wrongful Death Act does create a right of action in favor of statutory beneficiaries which was not recognized at common law. However, this Court has consistently held that the act also creates a new and independent cause of action in the statutorily designated beneficiaries. Neither Ash nor Perkins should be read to have held to the contrary." Nissan, 508 So.2d at 714 (citations omitted). Importantly, we distinguished our decision in Perkins by noting that unlike the decedent there, Phlieger had a right to maintain an action against Nissan at the time of his death because the twelve-year statute of repose had not yet expired at that time:
In Perkins we held ... that a wrongful death action is barred where the decedent, during his lifetime, had filed a personal injury action against the tortfeasor and had fully recovered. Our holding was based on the fact that "[a]t the moment of his death [the injured *117 party] had no right of action against the tortfeasor because his cause of action had already been litigated, proved and satisfied.... Since there was no right of action existing at the time of death, under the statute no wrongful death action survived the decedent." As noted by the district court below, at the moment of Jay Phlieger's death, the twelve years had not yet run. Therefore, unlike the decedent in Perkins, Mr. Phlieger had a right to maintain an action against Nissan at the time of his death; and thus, Mrs. Phlieger, acting as his personal representative, had a statutory right to bring an action based on injuries suffered by Mr. Phlieger's survivors as a result of his death.
Id. at 715 (citation omitted).
Most recently, in Safecare Health Corp. v. Rimer, 620 So.2d 161 (Fla.1993), we addressed the question of whether an action for wrongful death against a joint tortfeasor is barred by a prior settlement of the decedent's claim for personal injuries against the other tortfeasor and whether the tortfeasor that was not a party to the settlement is entitled to a damage setoff. We answered both questions in the negative, distinguishing our decision in Perkins in the process by emphasizing that the decedent's claim against Safecare had not been resolved at her death:
Unlike [Perkins ], the instant case involves two joint-tortfeasors charged with independent acts of negligence, and only one of the tortfeasors reached a settlement with the injured party before death. As the district court noted, Loeb's death extinguished her personal injury action; however, because she had not resolved her claim against Safecare, Loeb's survivors are entitled to bring a wrongful death action.
... In the instant case, the deceased had a viable claim against Safecare that had not been resolved at the time of her death; therefore, Rimer is not barred from bringing a wrongful death action.

Id. at 163-64 (emphasis added).
As is apparent from our discussion in Perkins, Ash, Hudson, Phlieger, and Safecare, we have predicated the wrongful death right of action upon whether the decedent maintained a right of action at his or her death. Accordingly, we consider whether the decedent enjoyed a right of action at her death in the instant case.
In Raydel, Ltd. v. Medcalfe, 178 So.2d 569 (Fla.1965), this Court held that an owner of a vehicle is not liable to a cobailee for injuries sustained by that bailee because of the bailee's own negligent operation of the vehicle. The plaintiff in Raydel, Mrs. Medcalfe, was injured when her husband negligently drove a vehicle in which she was the passenger. The Medcalfes' employer had loaned the vehicle in question to them. Accordingly, Mrs. Medcalfe sought damages against her employer for the injuries she sustained in the accident under the dangerous instrumentality doctrine. We rejected that claim, explaining:
[W]e do not believe the dangerous instrumentality doctrine applies where an automobile is entrusted to a husband and wife jointly and while it is in their personal use and under their dominion and control it is negligently operated by one of them, injuring one or both of them. Under such circumstances recovery for such injuries can not be had by either or both of them from the owner of the automobile.
Id. at 572. Although Raydel did not involve an action for wrongful death, Raydel makes clear that a co-bailee has no right of action against the owner of a vehicle because that status prevents the imputation of their negligence to the owner under the *118 dangerous instrumentality doctrine: "She and her husband were co-bailees or joint adventurers, having been entrusted jointly with the possession of the automobile for their personal use. In such status they cannot impute the negligent operation of the automobile by either of them to the Petitioners and recover damages for injuries to either of them arising therefrom." Id.
The Fifth District in the instant case concluded that as the decedent had no right of action against Alamo as a co-bailee of the rental vehicle, no wrongful death cause of action arose in the survivors:
We do not believe that an individual's status as a co-bailee of a dangerous instrumentality is a mere disability to sue, but rather, [it] prevents the cause of action from wholly existing in such a circumstance. The dangerous instrumentality doctrine, in short, was never intended to apply to the bailee of that instrumentality during the operation of the bailment. The co-bailee cannot impute the negligence of the other cobailee/driver to Alamo. We hold that because no right of action existed at the time of Julia Studdard's [sic] death, no wrongful death cause of action survived the decedent.

Toombs, 762 So.2d at 1042 (emphasis added). We agree. Absent the ability to impute Ian Stuttard's negligence to Alamo, no right of action originated in the decedent to which a wrongful death cause of action could attach.

CONCLUSION
Although we have long emphasized that an action for wrongful death is distinct from the decedent's action for personal injuries had he or she survived because it involves different rights of recovery and damages, the language of the Act makes clear a cause of action for wrongful death that is predicated on the decedent's entitlement to "maintain an action and recover damages if death had not ensued." See Valiant Ins. Co. v. Webster, 567 So.2d 408, 411 (Fla.1990) ("While the Wrongful Death Act creates independent claims for the survivors, these claims are also derivative in the sense that they are dependent upon a wrong committed upon another person."); Celotex Corp. v. Meehan, 523 So.2d 141, 147 (Fla.1988) ("[A] wrongful death action is derivative of the injured person's right, while living, to recover for personal injury."). Accordingly, consistent with our decisions in Perkins, Hudson, Phlieger, and Safecare, we hold that no cause of action for wrongful death survived the decedent in the instant case because she had no right of action at her death. We approve Toombs and disapprove Alley.
It is so ordered.
ANSTEAD, C.J., SHAW, WELLS, PARIENTE, and LEWIS, JJ., and HARDING, Senior Justice, concur.
QUINCE, J., dissents with an opinion.
QUINCE, J., dissenting.
I believe that the principle espoused by this Court in Shiver v. Sessions, 80 So.2d 905 (Fla.1955), is equally applicable to this case and would allow the minor children of the decedent in this case to sue for wrongful death. As the majority points out, the plaintiffs in Shiver, the minor children of the decedent, brought suit against the estate of their stepfather, who had shot and killed their mother and then himself. The estate argued that the children could not maintain the action for wrongful death since the mother could not have maintained an action because of interspousal immunity. This Court, however, reversed the dismissal of the case, finding the conduct of the husband did not cease to be a tort merely because the wife would not *119 bring an action for reasons personal to herself. In so doing, the Court said:
It is also well settled that our Wrongful Death Act creates in the named beneficiaries "an entirely new cause of action, in an entirely new right, for the recovery of damages suffered by them, not the decedent, as a consequence of the wrongful invasion of their legal right by the tortfeasor." Ake v. Birnbaum, 156 Fla. 735, 25 So.2d 213, 218, 221. This right is "separate, distinct and independent" from that which might have been sued upon by the injured person, had he or she lived. Epps v. Railway Express Agency, Fla.1949, 40 So.2d 131, 133.
A workable distinction between these two separate and distinct rights of action, on the one hand, and the "original act of negligence of the tortfeasor [which is] the gist of all actions maintainable either by the decedent in his lifetime or by the personal representative and the widow [or other beneficiary under the Wrongful Death Act] after his death," Epps v. Railway Express Agency, supra, on the other, was made by the Ohio Supreme Court in Fielder v. Ohio Edison Co., 158 Ohio St. 375, 109 N.E.2d 855, 859, 35 A.L.R.2d 1365, in considering the Ohio Wrongful Death Act in another context. It was there said that "A right of action is a remedial right affording redress for the infringement of a legal right belonging to some definite person, whereas a cause of action is the operative facts which give rise to such right of action. When a legal right is infringed, there accrues, ipso facto, to the injured party a right to pursue the appropriate legal remedy against the wrongdoer. This remedial right is called a right of action." With this distinction in mind, it is clear that the Legislature intended that the right of action created by the Wrongful Death Act in favor of the named beneficiaries must be predicated upon operative acts which would have constituted a tort against their decedent under established legal principlesin other words, they must state a "cause of action" for tort against the tortfeasor, subject to the defenses of contributory negligence and the like which the tort-feasor could have pleaded in a suit against him by the decedent during his or her lifetime, and this court has so held in many cases. But we think it is unreasonable to imply that the Legislature intended to bar the "right of action" created by the Act on account of a disability to sue which is personal to a party having an entirely separate and distinct "right of action" and which does not inhere in the tort or "cause of action"upon which each separate right of action is based.
Shiver, 80 So.2d at 907-08.
Based on the Shiver analysis, the Second District Court of Appeal in Enterprise Leasing Co. v. Alley, 728 So.2d 272 (Fla. 2d DCA 1999), allowed a wrongful death action by a decedent's minor children under circumstances similar to the ones presented in this case. In Alley, the decedent was the co-bailee with her husband of an automobile rented from Enterprise Leasing. While the decedent's husband was driving, he fell asleep, and the car veered off of the highway and crashed into a guardrail. The personal representative for the estate of the wife filed suit, and the children of the decedent recovered damages under the Wrongful Death Act. In affirming the recovery, the Second District concluded the decedent's status as a cobailee was personal to her but did not bar the survivors' action against the tortfeasor.
I agree with this analysis. The fact that the decedent in the case before us was a co-bailee of the vehicle rented from Alamo does not negate the fact that her husband, *120 the driver of the rented vehicle, committed a tortious act. Thus, there exists a cause of action based on his tortious conduct. The Wrongful Death Act has given the decedent's children a right of action for the infringement of their rights to their mother's support, companionship, etc. This right of action should not be changed or abridged simply because, for reasons personal to her, the mother could not have recovered for her own injuries, had she lived.
Because I believe the children have a right of action under these circumstances, I would quash the decision of the Fifth District Court of Appeal in Toombs v. Alamo Rent-A-Car, 762 So.2d 1040 (Fla. 5th DCA 2000), and approve the decision of the Second District Court of Appeal in Enterprise Leasing Co. v. Alley, 728 So.2d 272 (Fla. 2d DCA 1999).
NOTES
[1] In the complaint, Toombs, as next friend, also sought damages for personal injuries suffered in the accident by Stuttard's daughter, Bethan.
[2] The dangerous instrumentality doctrine "imposes strict vicarious liability upon the owner of a motor vehicle who voluntarily entrusts that motor vehicle to an individual whose negligent operation causes damage to another." Aurbach v. Gallina, 753 So.2d 60, 62 (Fla.2000) (citing Southern Cotton Oil Co. v. Anderson, 80 Fla. 441, 86 So. 629, 637 (1920)).
[3] The petitioner raises a collateral issue regarding the propriety of the trial court's order granting summary judgment, arguing that the facts did not establish that the decedent was a co-bailee of the rental car as a matter of law. We disagree. The facts established that Julia Stuttard's name and license number appeared on the rental agreement as an additional driver. Moreover, although the rental agreement was not signed by Julia, Ian Stuttard testified that Julia intended to and did drive the rental car prior to the accident. Finally, pursuant to the rental agreement, the Stuttards were charged for an additional driver. Under these circumstances we find no error in the trial court's conclusion that a joint bailment was established as a matter of law.
[4] The summary judgment granted by the trial court did not affect the claim for personal injuries on behalf of Stuttard's minor daughter.
[5] The accident which gave rise to the instant wrongful death action occurred on January 8, 1996. Section 768.19 has remained unchanged since its enactment in 1972. See ch. 72-35, § 1, Laws of Fla.
[6] Section 768.17, Florida Statutes (2001), provides:

Legislative intent.It is the public policy of the state to shift the losses resulting when wrongful death occurs from the survivors of the decedent to the wrongdoer. Sections 768.16 768.27 are remedial and shall be liberally construed.
[7] The decedent in Alley was listed as an additional driver in the rental car agreement. The issue of her status as co-bailee was apparently not disputed by the parties. See Alley, 728 So.2d at 272.
[8] As to our opinion in Shiver, Judge Harris observed:

In Shiver, the court permitted a wrongful death action by the mother's survivors against the husband for murdering his wife but only because the defense of interspousal immunity is inapplicable to wrongful death actions because the reason justifying the defense, domestic tranquility, is no longer a valid consideration. Since the wife is dead, the law can do nothing to encourage further domestic tranquility. Toombs, 762 So.2d at 1043 (Harris, J., concurring specially) (emphasis added).
[9] In Dressler we distinguished our decision in Raisen v. Raisen, 379 So.2d 352 (Fla.1979), wherein we rejected an attempt to abrogate the doctrine of interspousal immunity, by emphasizing that the policies fostered by interspousal immunity were not implicated in an action for wrongful death:

Nor can Raisen be fairly read to overrule Shiver. Petitioner points to the concluding paragraph of this Court's opinion in Raisen stating "that the common law doctrine of interspousal tort immunity is still viable in Florida and that it precludes a tort action between husband and wife in all cases." Raisen dealt with a tort and a suit arising therefrom occurring during a marriage. Both spouses were living and were parties to the suit. Raisen was decided on the grounds that allowing such a suit would be disruptive of marital unity and harmony. Obviously, Raisen cannot be applied to the factual situation here. Husband and wife are dead. There is no suit between spouses, just as there is no longer any marital unit to preserve.
Dressler, 435 So.2d at 794 (citation omitted) (emphasis added).
[10] The doctrine of interspousal immunity was abolished by this Court in Waite v. Waite, 618 So.2d 1360 (Fla.1993).
[11] Our holding was premised on the doctrine of merger: "This rule is supported by the theory that a cause of action merges into the judgment and, once the judgment is rendered and final, no cause of action exists." Perkins, 445 So.2d at 1012 (quoting Stuart M. Speiser, Recovery for Wrongful Death, § 5:18 (1966)).
[12] We emphasized the narrow reach of our decision in Ash in Nissan Motor Co. v. Phlieger, 508 So.2d 713 (Fla.1987), wherein we stated:

Although we stated in Ash that the issue before the Court was "whether a survivor can bring a wrongful death action in cases where if the decedent had survived, the decedent would have been precluded from filing suit because of the statute of limitations," that issue was never actually reached by this Court. In Ash we held that wrongful death actions based on medical malpractice would be governed by the medical malpractice statute of limitations, section 95.11(4)(b), Florida Statutes (1979). This conclusion was based solely on the fact that the statute of limitations at issue specifically defined an action for medical malpractice as including a "claim in tort or in contract for damages because of ... death" and thus, clearly expressed the legislature's intent that section 95.11(4)(b) apply to wrongful death actions based on medical malpractice.
Id. at 715.